Conway, Ch. J.
Relator, Anthony Rainone, was convicted upon a plea of guilty of grand larceny, second degree, in the County Court of Kings County, and was sentenced on March 29, 1944 to State prison for a term of not less than 7 years and not more than 10 years.
On September 26, 1949 relator was released on parole. On April 19, 1950 while he was out on parole, relator was alleged to have committed the Federal offense of transporting a motor vehicle in interstate commerce knowing the same to have been stolen. On June 26, 1950 the New York State Board of Parole issued a warrant for his arrest as a parole violator, alleging delinquency as of April 19,1950 in conformity with that board’s belief that he had committed the above-described Federal offense.
Under the Parole Board warrant, relator was arrested by the Parole Board authorities and jailed in a New York City prison on July 10, 1950.
Thereafter, relator was turned over to the Federal authorities by the Parole Board to answer the Federal charge pending against him and to stand trial upon such charge. He stood trial and on February 15, 1951 a verdict of guilty was returned. On that day he was again returned to the custody of the State Parole Board.
On February 21, 1951 relator was again returned to the Federal authorities for sentencing upon the Federal conviction— he was sentenced to 4 years’ imprisonment — and after having then been returned to the custody of the State authorities he was on May 8, 1951 once again turned over to the Federal authorities by the Parole Board — this time to commence service of the sentence imposed by the Federal court.
After service of the Federal sentence and on March 24, 1954 *370 relator was released from the Federal penitentiary into the custody of the State Parole Board, under its warrant, and was again returned to, and confined in, the New York City prison. On April 8, 1954 he was removed by the Parole Board to New York State prison.
The present writ of habeas corpus was sued out by relator in August of 1954 upon his claim that his State sentence had then expired. On October 5, 1954 the writ was sustained by the Cayuga County Court and relator was ordered discharged from the custody of respondent, the Warden of Auburn Prison. The Appellate Division, Fourth Department, reversed and the instant appeal followed.
On this appeal, relator contends that his State sentence continued to run during the time that he was in the custody of the Federal authorities and that, therefore, his State sentence expired on or before the date he sued out the present writ and that he is entitled to be discharged from the custody of respondent Warden. That is, relator claims, while the respondent Warden denies, that relator is entitled to receive credit on his State sentence for the following described time:
(a) Time spent in the custody of the Federal authorities in connection with the then pending Federal charge, from the date on which he was initially delivered to such authorities to the date on which he was released on bail by the Federal authorities and taken into custody again by the State parole authorities (July 12, 1950 to August 2, 1950 — a period of 20 days).
(b) Time spent in the Federal penitentiary under the Federal sentence (May 8, 1951 to March 24, 1954 — a period of 2 years, 10 months, 16 days).
It is conceded that relator is entitled to no credit for the time while he was at large as a parole violator, i.e., from the date of delinquency to the date of his arrest by the State parole authorities— April 19, 1950 to July 10, 1950. (See Correction Law, § 218; People ex rel. Dote v. Martin, 294 N. Y. 330, 333.)
The State Department of Correction has credited relator with 7 years, 7 months and 17 days jail time toward his 7 to 10 year State sentence. If, in addition, relator were to receive credit for the time he spent in the Federal penitentiary serving the Federal sentence, he would have, as of October 5, 1954, a total credit of 10 years, 6 months and 3 days or 6 months and 3 days more than the maximum term of 10 vears to which he was *371 sentenced by the State court. On the other hand, if relator were not entitled to credit for the time spent in the Federal penitentiary, he would have, as of October 5, 1954, a total credit of 7 years, 7 months and 17 days or credit for less than the maximum time required to be served under the State sentence. It is manifest, therefore, that we need not decide whether relator was entitled to the 20-day credit claimed by him but need only decide whether he was entitled to the time spent in the Federal penitentiary, viz., 2 years, 10 months and 16 days.
When relator violated the conditions of his parole by committing a Federal offense he interrupted or stopped the running of his State sentence (see Correction Law, § 218). However, his sentence began to run once again when he was taken into custody by the parole authorities. Relator did not himself, thereafter, commit any act to interrupt its running. Accordingly, what we must decide is whether the Parole Board, by its act of surrendering relator to the Federal authorities to serve the Federal sentence, was capable of stopping the running of his State sentence.
Before reaching that question, however, we think it advisable to mention the fact that the surrender of relator for the purpose of serving the Federal sentence before completing the State sentence was not required by any rule of comity. Fundamentally, a State or the Federal Government has jurisdiction only over persons who are within its respective territory, and thus subject to the mandates of its courts. A criminal prosecution, in order to be effective in legal contemplation, demands that the person to be prosecuted be present. A person, who happens to be, at a given time, subject to prosecution by more than one government, cannot be in more than one place at the same time. Thus, in aid of the vindication of its respective laws, in the spirit of intergovernmental courtesy and co-operation, it is found expedient that there exist, between and among governments, a reciprocal comity and pact of mutual assistance so that due and orderly procedure may be promoted. In pursuance thereof, a government may and should surrender a person to the jurisdiction of another for the purpose of trial. This should be done within a reasonable time after the date on which the alleged criminal act was committed, instead of waiting for the suspect to complete a prison sentence. Indeed, a speedy trial constitutes a benefit to the suspect and to society as well. *372 It is beneficial because, by virtue of a delay in trial, witnesses may disappear, die or become otherwise unavailable, their memories may fade, become fogged and less accurate, and, with the passage of time, the vigor of officials charged with the duty of prosecution proportionately lessens (Ponzi v. Fessenden, 258 U. S. 254, 264; 1910 Atty. Gen. 888). Thus, prompted by comity, a government is justified in delivering its own suspect or prisoner to the jurisdiction of another for the purpose of a seasonable trial there. The suspect or prisoner cannot be heard to complain if this does take place. “ The penitentiary is not a place of sanctuary; and an incarcerated convict ought not to enjoy an immunity from trial merely because he is undergoing punishment on some earlier judgment of guilt.” (Rigor v. State of Maryland, 101 Md. 465, 471-472; emphasis added.) Surrender to a foreign jurisdiction, however, for the sole purpose of serving a foreign prison sentence, is a different matter. Here, no harm can conceivably befall the person or the other sovereignty if such person be required to complete an earlier sentence before he commences to serve a foreign sentence. Consequently, no rule of comity between governments requires a surrender for the purpose of serving a foreign sentence.
We return now to the question of whether the Parole Board had the power, by the act of delivering relator over to the Federal authorities for the service of the Federal sentence, to cause relator’s State sentence to stop running while he was serving such Federal sentence.
A sentence of imprisonment is a solemn pronouncement. As a safeguard to the prisoner, the Legislature has provided in section 2188 of the Penal Law that: “ The court, judge, justice or magistrate authorized to impose sentence upon conviction may * * * (1) suspend sentence, or (2) may impose sentence and suspend the execution of the judgment. * * * Provided, however, that the imprisonment directed by the judgment, shall not be suspended or interrupted after such imprisonment shall have commenced.” (Emphasis added.) Similarly, section 470-a of the Code of Criminal Procedure entitled ‘ ‘ Suspension of sentence ; suspension of execution of judgment ’ ’, provides: “ * * * Provided, however, that the imprisonment directed by the judgment shall not be suspended or interrupted after such imprisonment shall have commenced.”
*373 The above statutes expressly prohibit a court or judge from interrupting a prisoner’s sentence after such imprisonment shall have commenced. (People ex rel. Paris v. Hunt, 201 App. Div. 573, affd. 234 N. Y. 558.) Under section 231 of the Correction Law, the term of imprisonment begins “ on the date of his actual incarceration in a state prison or penitentiary ’ ’. The Parole Board, of course, is not expressly prohibited by statute from interrupting a prisoner’s sentence. On the other hand, it is not expressly given the power to do so. It may not be urged that the Legislature, in prohibiting interruption by a judge — the imposer of the sentence — intended, by implication, to confer the power of interruption on the Parole Board. Upon the inception of imprisonment, the prisoner’s sentence commences to run. The Parole Board is permitted to ameliorate the punishment by releasing the prisoner on parole but he is in a prison still — a prison without walls. That is, he is permitted to serve his sentence outside of the prison walls. His sentence continues to run without interruption. The prisoner, by his own act of delinquency amounting to a violation of parole, may interrupt the running of the sentence. However, it begins to run again when he is apprehended and returned to the custody of the Parole Board. At that time, the Parole Board may reparole the prisoner (if a felony were not committed) or it may require him to complete the balance of his State sentence in the State prison. Regardless, however, of what the Parole Board does with the prisoner, after it has regained custody of him, his State sentence continues to run. In the instant case, the Parole Board surrendered relator to the Federal authorities for the purpose of serving his Federal sentence. Whether or not it had the power or authority, as such, to do so is immaterial for relator’s State sentence continued to run.
By way of summary, then, the sentencing judge may suspend the sentence before imprisonment has begun, but not thereafter; the prisoner himself may interrupt the sentence by escape from prison or by violation of parole; the Governor, of course, by commutation or pardon, may modify the sentence; and the Parole Board, having the power only to ameliorate punishment under the sentence by parole, can itself do nothing insofar as the running of the sentence is concerned.
Accordingly, upon relator’s return to the custody of the Parole Board after the Federal trial was had and sentence pro *374 nonneed, he should have been reincarcerated in. the State prison to complete the balance of his State sentence or reparoled.
It is true that had relator in the first instance been reincarcerated in the State prison, he would have been required, upon the expiration of his State sentence, to serve his Federal sentence in full. It is likewise true that relator owed a debt of years to the People of the State of New York and merely because he served the Federal sentence when he should have been serving the balance of his State sentence, that debt has been satisfied without actual payment in full. Nevertheless, the relator himself did nothing to effect such a result. We are concerned only with orderly procedure to the end that a court’s solemn pronouncement, in the form of a prison, sentence, shall be obeyed — that State prison sentences shall be .served in full, but not in an interrupted manner. Relator’s State sentence has expired and he was properly discharged from the State prison.
The order of the Appellate Division should be reversed and that of the Cayuga County Court should be reinstated.
Desmond, Dye, Fuld, Fboessel, Van Voobhis and Btjeke, JJ., concur.
Order reversed, etc.