UNITED STATES of America ex rel.
Elliott THURMOND, Petitioner,

v.

Vincent R. MANCUSI, Warden of Attica
State Prison, Attica, New York,
Respondent.

No. 67 C 526.

United States District Court
E. D. New York.

Sept. 14, 1967.

Following Hearing Oct. 13, 1967.

W. Bernard Richland, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen. of New York, New York City, for respondent. Murray Sylvester, Mortimer Sattler, Asst. Attys Gen., of counsel.

## OPINION AND ORDER

WEINSTEIN, District Judge.

Petitioner pled guilty to the felony of attempting to sell six marijuana cigarettes. A first offender, he was sentenced in March of 1964 by the County Court, Nassau County, to a term of two and one-half to five years imprisonment. He did not appeal but commenced serving his sentence at once. After unsuccessfully seeking a writ of coram nobis in the state courts, petitioner now seeks release from Attica State Prison through a writ of habeas corpus from this Court.

## I. PRIOR PROCEEDINGS

Petitioner collaterally attacked his sentence in the state courts on the ground that he pled guilty in reliance upon a promise of leniency which was not complied with. A full evidentiary coram nobis hearing was held in the County Court, Nassau County, in June of 1965. He was represented by counsel. Petitioner, a witness on his behalf, his former counsel, and the Assistant District Attorney who prosecuted the case testified.

The County Court—presided over by the same judge who had conducted the prior proceedings in the case—found that no promise had been made by the District Attorney to the defendant. Its finding, amply supported by the record, was:

"The evidence justifies a determination that no promise was made by the District Attorney to the defendant. At most a finding might be made that defendant's counsel led him to believe that a suspended sentence was probable; but the courts have * * * held that the remedy of coram nobis is not available in a situation such as here presented." Opinion and order dated September 24, 1965, County Court, Nassau County, p. 3.

This decision was unanimously affirmed by the Appellate Division. People v. Thurmond, 26 A.D.2d 622, 272 N.Y.S.2d 730 (2d Dep't 1966). Leave to appeal to the Court of Appeals was denied.

On June 2, 1967 petitioner filed an application in this Court for a writ of habeas corpus, claiming that his plea of guilty was involuntary. This Court, on June 13, (1) granted leave to proceed in forma pauperis and (2) ordered the Attorney General of the State of New York, as counsel for relator, to show cause why a writ should not issue. The Attorney General submitted a return which included the transcripts of the coram nobis proceeding, the plea of guilt and the sentencing; correspondence between the prisoner and the County Court; the opinion and order on the coram nobis application; the brief of the District Attorney in the Appellate Division on the appeal from the order of the County Court in the coram nobis proceeding; and an affidavit from an Assistant Attorney General of the State of New York.

Even after giving full effect to the rule that findings of fact by a state court upon a full hearing ordinarily require denial of a writ of habeas corpus by a federal court, the return was not dispositive of the issues raised by the petition. Accordingly, by memorandum and order dated August 8, 1967, this Court declared that petitioner had "posed a serious question with respect to whether the proper legal standard was utilized by the County Court." The Court appointed distinguished counsel for petitioner.

Following an investigation by counsel for petitioner and the filing of his briefs and the state's, there was extensive oral argument. At the conclusion of the argument a writ of habeas corpus ad testificandum was issued requiring production of the prisoner at the Federal House of Detention in New York so that his counsel could consult with him and so that he would be available for a possible evidentiary hearing. Additional papers were then submitted by both parties.

A subsequent oral hearing was held on the petitioner's application for bail. This application was denied.

For the reasons indicated below, a full evidentiary hearing should now be held by this Court to test whether petitioner is being detained by the State of New York in violation of his rights to due process of law under the Fourteenth Amendment to the United States Constitution. To assist counsel in preparing for the hearing, this preliminary opinion is now filed. The evidence set out below is culled from the return of the Attorney General of the State of New York to this Court's order to show cause. No findings of fact are now being made.

## II. EVIDENCE IN RETURN OF STATE

On July 16, 1963, petitioner was indicted for the felony of selling narcotics (six marijuana cigarettes) upon two occasions, once in December, 1962 and once in January, 1963. Upon arraignment, petitioner pled not guilty.

According to petitioner's testimony at the coram nobis hearing—testimony which was disputed in part—petitioner consistently maintained his innocence. His attorney strongly urged him on several occasions to change his plea. Petitioner testified that he was told by defense counsel that "they have a pretty tough case against you" and that "you are facing 7½ to 15 years." Petitioner steadfastly refused to plead guilty, insisting that he was going to "fight it."

Petitioner further testified that immediately before his trial started he saw his attorney talking with the Assistant District Attorney and overheard the latter say, "if your man doesn't want to cooperate, I can prosecute him to the

fullest extent of the law. I can see he gets lots of time [but] if your man cooperates with me, it will go easy on him." When the conversation ended, petitioner claimed that he was told by his attorney that since he had a clean record, the Assistant District Attorney would recommend a suspended sentence if he pled guilty to an attempted sale. Petitioner still refused to change his plea.

The trial then began and one witness (the person to whom petitioner allegedly sold the marijuana) testified. Again, petitioner was urged by his attorney to plead guilty to an attempt. Finally, petitioner testified, after being assured that he would not go to prison, he agreed. The subsequent proceedings in the courtroom, as revealed by the full transcript, were as follows:

THE CLERK: Is there an application?

MR. FARRELL: Application at this time, I would like to withdraw the plea of not guilty and enter a plea of guilty to attempted felonious sale of narcotics under count number one in full satisfaction of the indictment.

MR. CESTARO: Your Honor, this is acceptable to our office. May the record indicate that no promises or representations have been made concerning punishment.

THE COURT: Eliot [sic] Thurmond, do you understand what is being done?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you are withdrawing your plea of not guilty?

THE DEFENDANT: Yes, sir.

THE COURT: To feloniously selling a narcotic drug and you are entering a plea of guilty to attempted selling of a narcotic drug?

THE DEFENDANT: Yes, sir.

THE COURT: That is your wish?

THE DEFENDANT: Yes, sir.

THE COURT: All right, that is acceptable.

THE CLERK: You are informed that if you have any prior convictions that may be proven and used against you you may be liable to additional punishment.

Do you wish to withdraw your plea of not guilty entered September 4, 1963, and at this time enter a plea of guilty to attempted feloniously selling a narcotic drug under the first count of the indictment in satisfaction of the indictment?

THE DEFENDANT: Yes, sir.

(Defendant sworn; pedigree taken.)

THE CLERK: Date of sentence?

THE COURT: March 6th.

THE CLERK: Bond here of $2500.

MR. FARRELL: Bail be continued, Judge?

THE COURT: Yes, bail continued.

Petitioner claims not to have heard the District Attorney's statement that no promise had been made. As he put it, "I was upset and a little confused." The court's questions could reasonably be construed as inquiring only if defendant knew he was pleading guilty.

On the day of sentencing, petitioner's attorney, apparently assuming that sentence would be suspended, allegedly told his client, "When this is over, be sure to keep your nose clean. Stay out of trouble."

At the time of sentencing there was no inquiry with respect to the plea. Petitioner's record was characterized as "not good" by the court without indicating the basis for this conclusion. (Petitioner, it will be recalled, was a first offender.) Petitioner was sentenced to two and one-half to five years in jail. His attorney remained mute during the sentencing. Petitioner testified:

"I was bewildered. I looked around and all I could see was [my lawyer's] back going out the door * * * I was confused. The man [court officer] grabbed me by the arm and took me out."

A few days thereafter, having been allegedly deserted by his attorney, petitioner wrote a letter to the sentencing judge from the Nassau County jail stating that he had been told by his lawyer

that he would receive a suspended sentence and asking the court to investigate. His letter stated:

"Dear Sir:

Please bear with me a few minutes. I know that ignorance of the law is no excuse, but I am. On 3/6/64 you sentenced me to Sing Sing from two and one half to five years. I've lived in Nassau County for the past 37 years and have never been in trouble before.

My lawyer promised me that if I pleaded guilty to the sale of marijuana I would receive a suspended sentence and be placed on probation. As I'm completely ignorant of the working of the law and the courts, I placed my trust in my attorney's word. As my probation report must state, I was gainfully employed up to the time of my arrest. I have never lived off the proceeds of crime in the past. I feel that because I have never been in trouble before that my sentence was too harsh.

I beg of you not only as a judge of the County of Nassau but also as a fellow man to reconsider my sentence.

Your Honor I'm placing my trust and faith in your sense of fairness and justice. Thanking you in advance for all considerations you might have in my behalf.

Yours sincerely
Elliott D. Thurmond"

In reply petitioner received a letter from the Chief Law Assistant of the Nassau County Court informing him that nothing could be done. The Chief Law Assistant's letter read as follows:

"Your letter of March 9, 1964 addressed to * * * a Judge of this Court, has been referred to the undersigned for reply.

We have reviewed the facts as set forth in said letter * * * but find that there are no provisions in the law permitting a Judge of this Court to commute or otherwise suspend a properly imposed sentence during its term once the prisoner has commenced actual service of the sentence.

We regret, therefore, we can do nothing further in this matter."

■ In point of fact the legal conclusion in this court official's letter to the petitioner was somewhat misleading. New York has construed section 337 of its Code of Criminal Procedure to authorize a court to allow withdrawal of a plea of guilt only before a sentence has actually "gone into execution." People v. Forlano, 19 A.D.2d 365, 366, 243 N.Y.S.2d 559, 560 (1st Dep't 1963). But a sentence to state prison does not go into execution until the defendant is confined in the state prison—and defendant was still in the county jail. People ex rel. Rainone v. Murphy, 1 N.Y.2d 367, 373, 153 N.Y.S.2d 21, 26, 135 N.E.2d 567 (1956). Thus, the County Court could have proceeded sua sponte to set aside the plea of guilt or to question the defendant further. People v. Serrano, 15 N.Y.2d 304, 308–310, 258 N.Y.S.2d 386, 388–390, 206 N.E.2d 330 (1965); People v. Longe, 269 App.Div. 474, 57 N.Y.S.2d 337 (3d Dep't 1945) (after sentencing while defendant was in sheriff's custody, court should have permitted plea to be withdrawn).

■■ Moreover, the statement of the Chief Law Assistant that "we can do nothing further in this matter," might well have been understood by a layman to mean that no avenue of attacking the sentence was then open. But, the Appellate Division of New York has extensive power to review and reduce sentences on appeal even after a plea of guilty. N.Y.Code Crim.Proc. § 543(1) (" * * * the appellate court may * * * reduce the sentence imposed to a sentence not lighter than the minimum penalty provided by law for the offense of which the defendant or defendants have been convicted * * * " [the minimum sentence for attempted sale of narcotics was one to two and one-half years]). See People v. Zuckerman, 5 N.Y.2d 401, 185 N.Y.S.2d 8, 157 N.E.2d 862 (1959) (defendant pled guilty; Appellate Division has broad discretionary power to reduce sentence or suspend execution). Cf., generally, American

Bar Association, Standards Relating to Appellate Review of Sentences, Standards 1.1(a) (i), 2.2(b) (1967). Since the Chief Law Assistant communicated directly with petitioner rather than through his counsel, his statement might have constituted an unconstitutional interference with petitioner's right of appeal. See Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215 (1951) (prison officials prevented prisoner from filing appeal papers within time allowed for appeal); Miller v. Bomar, 230 F.Supp. 204 (M.D.Tenn. 1963) (misleading actions by court clerk led prisoner to believe that appeal was no longer possible).

### III. LAW APPLICABLE TO COLLATERAL ATTACK ON GUILTY PLEA

■ There can be no doubt that the procedures surrounding pleas of guilt in state courts must meet the standards of due process required by the United States Constitution. A plea of guilt constitutes a waiver of a congeries of constitutional rights associated with criminal trials. Were the method of waiver unprotected, the main bastions of defendants' rights would be outflanked. See United States ex rel. Codarre v. Gilligan, 363 F.2d 961, 966 (2d Cir. 1966) ("The entry of a plea of guilty demands even more stringent safeguards than are required for confessions"); Enker, Perspectives in Plea Bargaining, in President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts, 116 (1967) (other constitutional bases for attacks on unfair plea bargaining). As the Supreme Court declared in Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927):

"A plea of guilt differs in purpose and effect from a mere admission * * *; it is itself a conviction. Like a verdict of a jury it is conclusive. * * * Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made volun-

tarily after proper advice and with full understanding of the consequences."

Since the ratio of guilty pleas to convictions after trial is estimated to be in the order of nine to one, it is understandable that major efforts are being made to develop detailed legislative rules and procedures relating to pleas of guilt. See, e. g., American Bar Assocation Project on Minimum Standards for Criminal Justice, Pleas of Guilty (Tent.Draft 1967); The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts, 9 (1967); Newman, Conviction: The Determination of Guilt or Innocence Without Trial, 3 (1966); Note, Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas, 112 U. Pa.L.Rev. 865, 865–66 (1964). Until such detailed rules are adopted, the minimum constitutional standards—unclear though they may be in rationale and scope—must be spelled out retroactively.

■ Fair procedures for accepting pleas of guilt must be designed to at least give reasonable assurance that (1) there is a substantial factual basis for a finding of guilt, and (2) the defendant pleads "voluntarily"—i. e., he understands the significance of what he is doing and his ability to exercise his judgment with respect to a course of conduct best serving his needs is not unduly impaired or distorted by his predicament. See, generally, Newman, Conviction: The Determination of Guilt or Innocence Without Trial, 10–52 (1966); American Bar Association Project on Minimum Standards for Criminal Justice, Pleas of Guilty, Standards 1.3, 1.4, 1.5, 1.6 (1967) (aid of counsel, time for deliberation, advice by court, voluntariness, accuracy); Enker, Perspectives on Plea Bargaining, in President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts, 108, 116 (1967); Note, Official Inducements to Plead Guilty: Suggested Morals for a Marketplace, 32 U.Chi.L.Rev. 167 (1964). As Judge Weinfeld put the matter in United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244, 253 (S.D.N.Y.1966):

"[D]ue process * * * means * * the plea reflects the considered choice of the accused, free of any factor or inducement which has *unfairly* influenced or overcome his will." (Emphasis supplied; footnotes omitted.)

■ Since the plea in the instant case was taken by the trial judge after a substantial portion of the People's case had been submitted, we can assume, for present purposes, that the County Court was justified in not inquiring further as to probable guilt. Cf. United States v. Lester, 247 F.2d 496, 500, n. 4 (2d Cir. 1964) ("We do not decide whether a judge should refuse a plea of guilty when made by one who asserts his innocence but enters the plea with full understanding of the nature of the charge and the consequences of his action"); American Bar Association Project on Minimum Standards for Criminal Justice, Pleas of Guilty, Standard 1.6 (1967) (the court should not accept a guilty plea "without making such inquiry as may satisfy it that there is a factual basis for the plea"). The state should submit a transcript of the aborted trial so that this assumption can be verified.

■ In order to determine whether a guilty plea was made voluntarily, a two step inquiry is necessary. First, we must decide whether improper promises or threats were made by a state official to induce the plea. This finding requires a determination of what observable physical events and conversations took place—in a sense, an "objective" matter. Second, if we find that there was no such official threat or promise, we must decide whether the defendant believed such a promise or threat had been made and whether his belief "induced" the plea. The finding and standard in this second stage can be characterized as "subjective" since an inquiry into the individual defendant's state of mind is involved.

## A. ACTUAL PROMISE OR THREAT BY STATE

■ There is an "objective test" of constitutionally valid plea bargaining procedures in at least two respects. If the state's agents make a threat or promise which is calculated to overwhelm the ability of persons such as defendant to decide rationally whether to stand trial or plead guilty, the plea is, as a matter of law, coerced and invalid. Scott v. United States, 349 F.2d 641 (6th Cir. 1965). Cf. Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962) (allegations of promise of leniency by Assistant United States Attorney required full hearing). Even if a promise is not coercive, if it leads to a plea and the promise is not kept, the plea is invalid. Cf. Pilkington v. United States, 315 F.2d 204 (4th Cir. 1963) (statement of court that five years was maximum sentence when, under Federal Youth Corrections Act, maximum sentence was six years); United States v. Lias, 173 F.2d 685, 688–689 (4th Cir. 1949) (proper to permit plea of guilt to be withdrawn "if, as a result of what the judge had said, the defendant was misled into pleading guilty under the belief that he would receive probation"); United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244, 249 (S.D.N.Y.1966) ("imposition by the judge of a sentence contrary to his express promise is wholly irreconcilable with * * * due process"). This result follows from an obligation to conduct criminal prosecutions in a fair manner. Cf. United States v. Hughes, 223 F.Supp. 477, 480 (S.D.N.Y. 1963), aff'd, 325 F.2d 789 (2d Cir. 1964).

Speaking of confessions, the Supreme Court in Rogers v. Richmond, 365 U.S. 534, 540–541, 81 S.Ct. 735, 739, 5 L.Ed. 2d 760 (1961), noted that some are excluded:

"not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system—a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charges against an accused out of his own mouth."

**516**

The fairness rationale of the confession cases provides a useful analogy in the plea cases since a full and admissible confession insures conviction with almost the same certainty as does a plea of guilt. But cf. Note, 112 U.Pa.L.Rev 865, 885 (1964) (confession is an admission of fact of guilt; plea of guilt is only an admission that prosecution's case is substantial); Enker, Perspectives on Plea Bargaining, in the President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts, 108, 116–17 (1967) (confession not analogous to plea of guilt).

These "objective standards" are applied without respect to whether the particular defendant was guilty or whether he was, subjectively, overwhelmed by the state's threat or promise. They are designed to deter officials from exceeding the bounds of propriety in making inducements and breaking commitments. All the judges of the Court of Appeals for the Fifth Circuit agreed upon a test that is in part "objective" when they noted:

> "a plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel must stand *unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper * * *.*"
> Shelton v. United States, 246 F.2d 571 572, n. 2 (5th Cir. 1957), rev'd on confession of other error, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958) (emphasis supplied).

This Court is bound by the clear finding in the state court, following the coram nobis hearing, that no promise was made by the District Attorney and that there was none to be broken. No finding was made by the state with respect to whether a threat was made by the District Attorney. The issue of threat will be resolved at the hearing in this Court.

B. **BELIEF BY DEFENDANT IN PROMISE OR THREAT**

If, at the time he pled guilty, the defendant believed that a coercive promise or threat had been made by either the court or the prosecutor, though in fact no such promise or threat had been made, and his plea was induced by this belief, it is an involuntary and void plea. This conclusion necessarily follows from the fact that voluntariness connotes a state of mind of an actor. If the actor—i. e., the defendant—believes that a promise has been made, the effect on his state of mind is exactly the same as if such a promise had in fact been made. Thus, any test of whether a person acts voluntarily is necessarily "subjective." United States v. Lester, 247 F.2d 496, 502 (2d Cir. 1957) (if defendant's "interpretation [of representations] though wrong was reasonable and he was therefore misled into pleading guilty then, the majority holds, the plea of guilty may be withdrawn") (dissenting opinion); United States v. Tateo, 214 F.Supp. 560 (S.D.N.Y.1963) ("subjective reaction cannot be disregarded in appraising whether or not the defendant had the required free will of mind at the time of his guilty plea;" no claim of specific promise made). It matters not that defendant would have acted reasonably in pleading guilty under the circumstances without any assurance from the District Attorney; if the defendant was under a serious misapprehension, his plea must be held to have been involuntary. Pilkington v. United States, 315 F.2d 204, 207 (4th Cir. 1963).

The rationale with respect to the standard to be applied in determining the voluntariness of pleas of guilt is similar to that underlying the general rule of criminal law that a mistake need not be reasonable in order to be a valid defense to a crime involving mens rea. See American Law Institute, Model Penal Code, Tent. Draft No. 4, p. 136 (1955). "In effect, this involves the denial of any objective standard in

crimes requiring mens rea." Williams, Criminal Law; The General Part 208 (2d Ed. 1961).

▮▮▮▮ In seeking to determine the voluntary nature of a plea of guilt, what must be considered is the cumulative impact upon the defendant of "[t]he totality of all the surrounding circumstances." United States v. Miller, 243 F.Supp. 61, 63 (E.D.Pa.1965), aff'd, 356 F.2d 515 (3d Cir.), cert. denied, 384 U.S. 981, 86 S.Ct. 1882, 16 L.Ed.2d 691 (1966). The Court must examine the data available to the defendant's mind and take into account the natural strains and anxieties of a person in the defendant's position. While a defendant's surprise at the "severity of the sentence" will not itself invalidate a plea (United States v. Shneer, 194 F.2d 598, 600 (3d Cir. 1952)), it may be evidence of defendant's belief as to what he was promised in return for his plea.

Although not, perhaps, of constitutional significance, we should not ignore the fact that it is as embittering to a defendant—and as destructive of possible rehabilitation—for him to falsely conclude that he was misled as it is for him to reach that conclusion correctly. Newman, Conviction: The Determination of Guilt or Innocence Without Trial, 45 (1966). Certainly, no procedure can prevent many defendants from believing that they were unfairly treated. Whatever the circumstances, many of them, brooding in their cells, will ultimately be convinced of their own purity and the impropriety of society in dealing with them. But it is not too much to expect that society will so design its criminal procedures as to satisfy itself that it has done all that it can reasonably do to be fair to the defendant and to permit the defendant to make his decision in a voluntary and uncoerced way.

▮▮▮ A guilty plea induced by a mistaken belief that a binding plea agreement had been made is invalid even if it is the defendant's own attorney who is responsible for the defendant's mistaken belief. Compare United States v. Shneer, 194 F.2d 598 (3d Cir. 1952) (in-

nocent misrepresentation by counsel vitiates plea); United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244, 249 (S.D.N.Y.1966) ("even where no specific promise was made, and a guilty plea was entered as a result of a 'grave misunderstanding' solely on the part of defense counsel and not participated in by either the prosecution or the judge, the interests of justice required that defendants be relieved of their pleas and the judgments of conviction vacated"); and 8 Moore's Federal Practice, ¶ 11.05 [4] (1967 Supp.) ("Plea induced by defense counsel's false representations to defendant as to what, if anything, prosecutor promised. Under these facts the plea should be vacated, regardless of the prosecutor's lack of complicity.") with United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707, 712 (2d Cir. 1960) (defendant "must be supposed * * * to be advised, if he has counsel, that such a promise is in no way binding upon the court and ought not to affect the prisoner's judgment in pleading"; but if counsel is privy to state plan to fraudulently induce a plea, constitutional rights are violated). Cf. United States v. Johnson, 269 F.Supp. 767, 769 (S.D.N.Y.1967) (mere opinion of a "likely sentence" does not support charge of chicanery, trickery, inducement, fraud or overreaching); Note, U.Pa.L.Rev. 865, 890 (1964) (distinguishing between statements by defense counsel of general court practice and specific assurances).

A clearcut statement by defense counsel that the District Attorney has made a promise, or an ambiguous remark to which the defendant gives the same meaning, has much the same psychological effect on the defendant as a promise by the District Attorney. The effect may be greater since the defendant is likely to place more trust in his own attorney than in a member of the prosecutor's staff. The statements of an attorney may even support a finding that he acted so improperly that, for constitutional purposes, defendant was denied the right of effective counsel. Cf. United States ex rel. Maselli v. Reincke, 383 F.2d 129 (2d Cir. 1967) (failure of coun-

**518**

sel to advise on right of appeal). But cf., United States v. Horton, 334 F.2d 153 (2d Cir. 1964) (statement of attorney's opinion with respect to sentence; questioning by judge on voluntariness; sentence valid).

It cannot always be assumed that the presence of counsel automatically insures that the defendant has not been misled into pleading guilty. See Blumberg, "Lawyers with Convictions," Transaction, July-August, 1967, p. 18, quoted in Kamisar, "Are the Scales of Justice Evenly Balanced?", New York Law Journal, August 23, 1967, p. 4, col. 1; Trebach, The Rationing of Justice 148 (1964). Recent writings suggest that there are instances where defense counsel have considered their own rather than their clients' interest in disposing of a case by a guilty plea rather than by a long trial. Ibid. Indeed, it would be especially incongruous to impute the knowledge of counsel to his client in cases in which the latter claims that it was his own attorney who misled him.

█ There is little merit in the state's contention that a subjective test of what the defendant believed rather than what a district attorney or judge told him is too difficult to apply. The state of a man's mind, like most other issues of fact, is decided on the basis of reasonable inferences drawn from the known surrounding facts and circumstances. See United States ex rel. McGrath v. LaVallee, 319 F.2d 308, 315 (2d Cir. 1963) (concurring and dissenting opinion); United States v. Tateo, 214 F.Supp. 560, 565 (S.D.N.Y.1963). While a prisoner may proclaim that his prior state of mind negated the voluntariness of his plea, if it was unreasonable for him to entertain such a belief, faith in his veracity will be shattered. "[R]easonableness goes to the credibility of the accused as a matter of evidence." Williams, Criminal Law; The General Part 202 (2d Ed.1961).

Moreover, there are very practical procedural answers to the contention that a subjective test is too difficult to administer. Candor, a full record and a

bona fide attempt by the trial court "to verify that the defendant's plea is the result of an intelligent and knowing choice" should not be overly burdensome. The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts, 13 (1967).

If the inquiry is made properly in the first instance, there will be no need for extensive post-conviction hearings such as have been required in this case. Such hearings are difficult not only because of the passage of time and attenuation of evidence, but because the court cannot accept at face value the defendant's statement of what was in his mind. At the time the plea is taken, the defendant's statement of why he is pleading can be accepted and acted upon.

█ Where plea bargaining between the state and defendant actually has taken place, a contemporaneous inquiry by the court is essential to insure voluntariness. The fact that a plea has been entered after assurances of a reduced charge or a favorable sentence recommendation does not necessarily render it involuntary. See, e. g., Martin v. United States, 256 F.2d 345, 349 (5th Cir. 1958). Many plea agreements are valid so long as the defendant is "fully aware of the * * * actual value of any commitments made to him by the court, prosecutor, or his own counsel." Shelton v. United States, 242 F.2d 101, 115 (5th Cir. 1957) (dissent), rev'd en banc, 246 F.2d 571, rev'd on confession of other error, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958). See United States v. Hughes, 223 F.Supp. 477, 487 (S.D.N.Y.1963) ("defendant pleaded guilty . . . because he felt and knew he was guilty and because, acting on the advice of competent counsel, he concluded it was to his own best interest not to stand trial"), aff'd, 325 F.2d 789 (2d Cir. 1964); Barber v. Gladden, 220 F.Supp. 308 (D.Or.1963), aff'd 327 F. 2d 101 (9th Cir. 1964); American Bar Association Project on Minimum Standards for Criminal Justice, Pleas of Guilty, 3 (1967).

A searching inquiry by the court at the time the defendant enters his plea is the most reliable and efficient means of determining whether the defendant fully understands the nature of the commitment that has been made to him. Such an inquiry by the judge accepting the plea has the value of permitting the defendant to reevaluate his position before throwing himself on the court's mercy. Everett v. United States, 119 U.S.App. D.C. 60, 336 F.2d 979, 980, n. 3 (1964) (resolution of district judges cited with approval: a "plea of guilty shall be accepted only when the court is satisfied that he is guilty and that he is entering the plea voluntarily and of his own free will, and with an understanding of his rights, and of the charges against him, and the consequences of entering the plea"); American Bar Association Project on Minimum Standards for Criminal Justice, Pleas of Guilty (1967) (standards); Note, U.Pa.L.Rev. 865, 893–95 (1964) (specific line of inquiry); Cf. People v. Seaton, 19 N.Y.2d 404, 280 N.Y.S.2d 370, 227 N.E.2d 294 (1967) (citing American Bar Association Standards Relative to Pleas, pp. 32–33, with approval); Munich v. United States, 337 F.2d 356, 359, n. 1 (9th Cir. 1964) (dictum on application of Rule 11 of Federal Rules of Criminal Procedure to states).

■ In this case, the trial court did not conduct an inquiry to determine whether petitioner's plea was voluntary. There was no "penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948). See Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244 (S.D.N.Y. 1966). "A mere routine inquiry—the asking of several standard questions—will not suffice to discharge the duty of the trial court." United States v. Lester, 247 F.2d 496, 499–500 (2d Cir. 1957). The fact that defendant was represented by counsel did "not relieve the court of the responsibility of further inquiry." Id. at 500. See United States ex rel. Co-

darre v. Gilligan, 363 F.2d 961, 965 (2d Cir. 1966).

■ Judicial notice of tensions surrounding acceptance of pleas makes it impossible to decide without a hearing that defendant understood the significance of the District Attorney's statement for the record that no promise was made. But even if the defendant did hear and did comprehend, his failure to challenge when his attorney stood mute is not conclusive evidence of acquiescence.

"If the judge, the prosecution, or the defense counsel makes a statement in open court that is contrary to what he has been led to believe, especially as to promises by the prosecutor or his defense counsel * * * [the defendant] would no more challenge that statement in open court than he would challenge a clergyman's sermon from the pulpit." Trebach, The Rationing of Justice 159–60 (1964).

See also American Bar Association, Standards Relating to Pleas of Guilty 61 (1967) ("Notwithstanding the fact that the plea has been the subject of negotiation, the defendant usually answers in the negative, and the prosecutor and defense counsel seldom indicate to the contrary").

■ In view of the circumstances of this case and the fact that defendant immediately wrote a letter to the court stating that he had only pled guilty because he had been told he would receive a suspended sentence, there can be no assumption that the plea was valid. See Machibroda v. United States, 368 U.S. 487, 490, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962) (hearing granted on basis of letters to sentencing court and Attorney General to which he received no reply); cf., United States v. Hughes, 325 F.2d 789, 791 (2d Cir. 1964) ("Judge Herlands sought primarily to determine whether Hughes had asserted his innocence at or about the time of his guilty plea, since that fact, if established, would have supported his claim that his plea had been induced by government representations rather than by a consciousness of guilt").

The hearing before this Court will determine whether the petitioner believed at the time he pled guilty that coercive threats or promises had been made by the state to induce his plea.

## IV. ADEQUACY OF COUNSEL; ASSUMPTIONS ON SENTENCING

A series of post-conviction applications for relief should be avoided. The Court will consider at the hearing two issues suggested for the first time by counsel for petitioner.

The Court will determine whether petitioner was denied effective assistance of counsel at or immediately following sentencing. Cf. United States ex rel. Maselli v. Reincke, 261 F.Supp. 457 (D. Conn.1966), aff'd, 383 F.2d 129 (2d Cir. 1967) (failure of counsel to advise defendant of right to appeal.) This question is particularly serious in view of the questionable legal advice purportedly given by a County Court official immediately following sentencing.

The Court will also consider whether defendant's rights were violated by the conclusion of the sentencing judge that petitioner had a "bad record." Petitioner was a first offender and the basis of the court's conclusion was, so far as the present record indicates, not revealed to the prisoner. See United States ex rel. Jackson v. Myers, 374 F.2d 707, 708 (3d Cir. 1967) (state sentencing judge mistakenly believed he was dealing with a three-time offender, although records showed only one conviction; counsel stood mute; discharges before a magistrate should have no place in determining sentence; federal habeas corpus proper).

## V. BURDEN OF PROOF

Under the circumstances of this case, the parties are directed to prepare for a full evidentiary hearing at the earliest possible date they can be ready. See United States ex rel. Maselli v. Reincke, 383 F.2d 129 (2d Cir. 1967); Townsend v. Sain, 372 U.S. 293, 314–316, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

In challenges to both federal and state sentences, the Court of Appeals in this circuit has ruled that the burden of establishing the invalidity of the plea is on defendant. United States v. Lester, 247 F.2d 496, 500 (2d Cir. 1957) (federal sentence); United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707, 713 (2d Cir. 1960) (state sentence). But cf. Munich v. United States, 337 F.2d 356, 360 (9th Cir. 1964) (where Rule 11 was not complied with because court did not conduct inquiry burden is upon government to prove voluntary nature of plea). In collateral attacks based upon the Constitution, the weight of the burden is a preponderance—i. e., more probable than not. Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (burden on petitioner to prove by "a preponderance of the evidence" that he neither had counsel nor waived his right to counsel); Moore v. State of Michigan, 355 U.S. 155, 162, 163–164, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957) (same; state conviction).

The 1966 amendments to section 2254 of title 28 of the United States Code may have reversed the burden of proof. While the statute is awkwardly constructed, reasonably parsed it seems to say that, where the merits of a factual dispute were not resolved in the state post-conviction hearings—the case here—the burden of proving a constitutionally valid plea rests upon the state. The statute, insofar as applicable, reads as follows:

"§ 2254. State custody; remedies in Federal courts

\*    \*    \*    \*    \*    \*

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent there-

of were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

    (1) that the merits of the factual dispute were not resolved in the State court hearing;

\*   \*   \*   \*   \*   \*

    (3) that the material facts were not adequately developed at the State court hearing;

\*   \*   \*   \*   \*   \*

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous."

The question of who has the burden of proof will become decisive only if this Court cannot determine that the probabilities favor the petitioner or respondent. The Court, therefore, does not now determine where the burden lies. In the exercise of its discretion to control the order of proof, the Court directs petitioner to proceed first with the introduction of evidence.

### FOLLOWING HEARING

#### FINDINGS OF FACT AND CONCLUSIONS OF LAW; ORDER

The following constitutes the Court's findings of fact and conclusions of law based upon the documents submitted by the state in its return and supplemental returns, argument by counsel, and testimony and exhibits at the evidentiary hearing:

    (1) As a matter of law no promise was made by the state or any of its officials to petitioner.

    (2) It is highly probable that no threat was made by the State or any of its officials to induce the plea. The Court finds that no such threat was made.

    (3) It is highly probable that trial counsel for petitioner never stated to him that a threat had been made by the state, nor did he ever threaten the petitioner. The Court finds that no threat was made, or transmitted, to petitioner by his trial counsel.

    (4) It is highly probable that no promise was made by trial counsel to petitioner that he would receive a suspended sentence if he pled guilty. It is highly probable that trial counsel did not state to petitioner that the state had promised a suspended sentence if he pled guilty. It is probable that trial counsel did not state to petitioner that the District Attorney or any of his representatives would request the sentencing judge, or suggest to the sentencing judge, that the sentence be suspended. The Court finds that petitioner was not told by trial counsel that any promise had been made by any representative of the state that he would receive a suspended sentence if he pled guilty. The Court finds that petitioner was not promised or assured by trial counsel that he would receive a suspended sentence if he pled guilty.

    (5) It is probable that petitioner had no belief that if he pled guilty he was assured of a suspended sentence. Petitioner's own witnesses testified to this effect. His uncle stated that petitioner had said that "he was pleading guilty because his lawyer had told him that he would probably get a suspended sentence." Another uncle, speaking of the same conversation, testified that petitioner had said, "I think I will get a suspended sentence." It is highly probable that petitioner believed that a sus-

pended sentence was likely. It is highly probable that petitioner was surprised by the sentence. The Court finds that at the time he pled guilty petitioner did not believe that the state, any of its representatives, or his own trial counsel, promised a suspended sentence or any kind of specific sentence if he pled guilty.

(6) Based on the close observation of petitioner during the hearing, his consistent and obvious feeling that he had not received a proper sentence as well as the substantial probability that he would have had available to him financial resources and friends, it is highly probable that petitioner would have requested his trial counsel, or other counsel, to move to set aside the sentence or the plea and to appeal from the judgment of the court had he been advised of his rights. Trial counsel testified that he did not advise petitioner with respect to the right of appeal. The letter petitioner received from the Chief Law Assistant was reasonably interpreted by him as foreclosing further procedures attacking the sentence. Accordingly, the Court finds that the petitioner was denied his right to appeal from the judgment of conviction.

*Failure of Sentencing Judge to Regard the Letter from Petitioner as an Application to Withdraw His Guilty Plea*

█ Under New York law the sentencing judge had discretion to allow the petitioner to withdraw his guilty plea. The letter of the Nassau County Court's Chief Law Assistant to the petitioner suggests that the sentencing court denied petitioner's application as a matter of law rather than discretion. Failure to exercise this discretion does not raise a federal constitutional question although it may have required remand on an appeal in the state judicial system. See Russell v. Conn., 20 N.Y. 81, 83 (1859) (where trial court fails to exercise its discretion because it believes it has no power to do so, it is reversible error); People v. Klein, 26 A.D. 2d 559, 270 N.Y.S.2d 999 (2d Dept. 1966) ("Section 337 of the Code of Criminal Procedure requires the trial court to

exercise an informed discretion and thus prohibits a peremptory denial of a motion thereunder"); cf. People v. Stanley, 12 N.Y.2d 250, 238 N.Y.S.2d 935, 189 N.E.2d 478 (1963) (appeal dismissed on misapprehension of contention of defendant).

*Ineffective Assistance of Counsel and Denial of Right to Appeal*

There has been a growing awareness of the need for adequate representation for criminal defendants immediately after trial. The problem was recently posed by experienced appellate counsel for New York City's Legal Aid Society:

"I think we all recognize that men have trial counsel, men have appellate counsel. But what happens in between? A man is convicted * * * he has ten days within which to file a notice of appeal and if he doesn't do it, he never will be in a position where he can get appellate counsel. The present practice * * * in most districts is that when a trial counsel, if he is retained, loses his case and there is no fee to be had for an appeal, he leaves his client. * * * during this * * * critical period many defendants are unrepresented, receive no advice about how to proceed further, or how to protect their rights. This, I think, is one of the more serious and glaring omissions in the present practice and present law on the question of representation of defendants, and this applies equally to indigent or non-indigent defendants." 36 F.R.D. 129, 153–154 (1965) (statement of Leon Polsky in a panel discussion held at the 1964 Judicial Conference of the Second Circuit).

██ This sensitivity to the problem has been reflected in three recent cases, which, when read together, lead to the conclusion that the failure on the part of trial counsel in the present case to inform his client of his right to appeal violates the 6th and 14th Amendments. See United States ex rel. Maselli v. Reincke, 261 F.Supp. 457, 460 (D. Conn.1966), aff'd, 383 F.2d 129 (2d Cir.

1967) (defendant informed retained counsel he wanted to appeal, but counsel failed to do so and neglected to inform defendant that the state would appoint counsel to assist him; "loss of defendant's right of appeal caused by conduct of his counsel may constitute a deprivation of constitutional due process."); Wynn v. Page, 369 F.2d 930 (10th Cir.1966); Fox. v. State of North Carolina, 266 F. Supp. 19 (E.D.N.Car.1967) (counsel discussed possible appeal with defendant but failed to inform him of statutory time limit for filing notice of appeal); American Bar Association Project on Minimum Standards of Criminal Justice, Appellate Review of Sentences, Standard 2.2(b)(i) (1967) (advice on right to appeal); Note, 78 Harv.L.Rev. 1434, 1447 (1965); cf., Court Rules, New York Supreme Court Appellate Division, Second Judicial Department, Rule III(a) (1967) ("upon conviction in the trial court . . . it shall be the duty of counsel for the defendant . . . to give . . . written notice to his client advising him of right to appeal and requesting his written instructions as to whether he desires to take an appeal").

In Wynn v. Page, a case much like petitioner's, the court described the facts as follows:

"With the help of a friend, appellant retained his own counsel for trial. * * * Appellant did not see his counsel after the verdict was returned and judgment and sentence imposed * * * No one, not even his attorney advised appellant of his right to appeal the conviction and sentence * * * and of the proper appellate procedure. * * * It appears that appellant's attorney was of the opinion that no reversible error occurred during the trial and there was no discussion after the trial between counsel and appellant concerning appeal." 369 F.2d at 932.

Under such circumstances, the court held, "appellant's fundamental right to assistance of counsel concerning his right to appeal was not adequately safeguarded." 369 F.2d at 932–933. In the present case a similar conclusion is warranted.

That petitioner was unaware of his right to appeal is highly probable. First, it is not likely that a layman would know that, after pleading guilty, an appeal would lie on the ground that the sentence imposed was excessive. Second, the trial court never informed petitioner of his right to appeal. Third, petitioner's counsel was not sure whether he had ever even seen petitioner after sentence was imposed; in any event, he testified that he did not discuss a possible appeal with him. Fourth, at the close of the evidentiary hearing, counsel for the state maintained that petitioner had been advised of a right to appeal by prison officials and stated it would be able to offer evidence to support this contention. The state subsequently indicated that it would not submit proof on this point, buttressing the inference that petitioner was not advised. Fifth, petitioner was affirmatively misled by the letter of the Chief Law Assistant to conclude that no means of attacking the sentence were available in the state courts.

Were this Court to speculate, it might find that the possibilities of a successful motion or appeal were poor. But the chances of success are not relevant in this proceeding unless the questions before the state courts would have been frivolous. On this record this Court cannot say that the state courts would have considered them frivolous. Accordingly, the Court finds that the petitioner was denied his constitutional rights to representation and to appeal.

The Court finds that it is probable that trial counsel did not inform petitioner of the basis for the sentencing court's conclusion that defendant's record was "not good". Nor did any representative of the state so inform him. Trial counsel testified that he saw the sentencing judge in chambers shortly before sentencing and it was then that he first learned that there was adverse information in the probation report. In view of the finding made with respect to denial of the right to counsel and the

**524**

right to appeal, there is no need to make a finding with respect to whether a denial of petitioner's constitutional rights resulted from the failure to give the defendant an effective opportunity, whether by allocution or otherwise, to contest the facts and conclusions upon which the sentencing court relied.

### Remedy

The time to appeal has long since expired. N.Y.Code Crim.Proc. § 521. Since petitioner took no steps to perfect an appeal, New York courts have held that they lack power to permit an appeal. See People v. Marchese, 19 A.D. 2d 728, 242 N.Y.S.2d 464 (2d Dept.1963) (failure of retained counsel to file notice of appeal), aff'd mem., 14 N.Y.2d 695, 249 N.Y.S.2d 888, 198 N.E.2d 916 (1964), cert. denied, 381 U.S. 910, 85 S.Ct. 1540, 14 L.Ed.2d 436 (1965); cf. United States ex rel. Kling v. LaVallee, 306 F.2d 199, 202 (2d Cir. 1962) (appeal dismissed by Appellate Division; court had power to vacate its order of dismissal because of timely notice of appeal).

The only way to now adequately protect petitioner's rights is to vacate the judgment of conviction. A new sentence can be imposed and time to appeal measured from the rendition of a new judgment. People v. Hairston, 10 N.Y. 2d 92, 94, 217 N.Y.S.2d 77, 176 N.E.2d 90 (1961). The judgment of the County Court is vacated.

Prior to sentence, petitioner had been released on bail of two thousand and five hundred dollars. The petitioner is ordered remanded to the Nassau County jail to be released upon posting of bail in the sum of two thousand and five hundred dollars in accordance with the practice applying to persons awaiting sentencing in the Nassau County Court. This decision is without prejudice to any motions either party may wish to make in any New York court.

The Court expresses its thanks for the assistance of counsel for both sides. In this vexing proceeding, Mr. Richland accepted an arduous assignment from the Court. He has prosecuted this proceeding with great verve and skill in the highest tradition of the Bar. His papers and the hearings indicate an enormous amount of preparation. The Court very much regrets that present statutes do not permit payment of attorney's fees or expenses in a habeas corpus proceeding. Such payments should be permitted.

So ordered.