UNITED STATES of America ex rel.
Charles F. SCOTT, Petitioner,

v.

Vincent R. MANCUSI, Warden, Attica
Prison, Attica, New York,
Respondent.

Civ. 1968–113.

United States District Court
W. D. New York.

Jan. 28, 1969.

H. Kenneth Schroeder, Jr., Buffalo, N.Y., for petitioner.

Richard R. Jenczka, Asst. State Atty. Gen., Buffalo, N.Y., for respondent.

CURTIN, District Judge.

Petitioner, a state prisoner confined to Attica Prison, made a "pro se" application for a writ of habeas corpus to this court, claiming he is in custody in violation of his constitutional rights. By order of this court dated April 8, 1968, the respondent was directed to produce the record of conviction and sentence and the record of an application for a writ of coram nobis.

A review of the record indicates that Charles Scott was indicted by an Erie County Grand Jury on November 30, 1962, charged with the crime of manslaughter in the first degree. Before indictment a preliminary hearing was held before Judge William G. Heffron in the Buffalo City Court. The defendant was represented throughout by his retained attorney, Herald P. Fahringer, who continued as his attorney in his subsequent conviction and plea.

On March 13, 1963 the defendant and his lawyer appeared before Erie County Court Judge Frederick M. Marshall. At that time he withdrew his former plea of not guilty and entered a plea of guilty to a reduced charge of manslaughter, second degree. When he appeared for sentencing on April 1, 1963 with his attorney, he pleaded guilty to an information charging him as a second felony

offender pursuant to New York Penal Law Section 1941, McKinney's Consol. Laws c. 40. This information was based upon a conviction on a plea of guilty to murder in the second degree in the District of Columbia on January 27, 1942. He was sentenced to a term of 15 years to life. In 1962 he was on parole after serving time on this conviction.

The defendant then applied to the court to withdraw his former plea of guilty to the crime of manslaughter in the second degree. This request was denied by Judge Marshall, and defendant was sentenced to a term of 7½ to 15 years in Attica. His appeal of the County Court Judge's order refusing to permit him to withdraw his guilty plea was affirmed by the Appellate Division and the Court of Appeals.

He made an application for a writ of coram nobis before Judge Marshall, which was denied without a hearing on September 21, 1966. This order was subsequently affirmed by the Appellate Division and leave to appeal to the Court of Appeals was denied. One of the grounds upon which he based his application for relief was that his guilty plea was induced by misrepresentations of his defense counsel about the sentence which the court would impose.

The petitioner has exhausted his available state remedies as required by Title 28, United States Code, Section 2254.

■ The basic constitutional issue raised here is whether or not petitioner's guilty plea was voluntarily entered. One of petitioner's claims is that the trial judge or the prosecuting attorney made promises regarding his sentence to his attorney which were not kept. The Court finds that there is no evidence to support this claim and it is rejected. Petitioner's other claim is that his retained counsel made misrepresentations to him concerning the sentence which the petitioner would receive if he pleaded guilty. The petitioner further alleges that he relied upon these misrepresentations in pleading guilty and, therefore, he argues that his plea was not voluntarily made.

A hearing was held on October 7, 1968 and the petitioner, his defense attorney, the Assistant District Attorney in charge of the file, and the County Court Judge testified.

On or about March 4, 1963, petitioner's attorney, the Assistant District Attorney and the trial judge met at the request of the defense counsel. They discussed the possibility of petitioner's pleading guilty to a reduced charge of manslaughter in the second degree. The defense attorney wanted the trial judge to suspend sentence and to have the defendant returned to Washington, D. C. as a parole violator. The trial judge stated that he would consider all the possibilities, but flatly refused to make any promises. He said that he would consider a suspended sentence if he could be assured that the defendant would be required to serve at least five years as a parole violator in Washington. His defense counsel called the District of Columbia Parole Office and received the impression that, if sentence was suspended and Scott returned to Washington, he would be required to serve at least five years. To confirm this, a letter dated March 13, 1963 was sent to the trial judge. The substance of this letter was that, if the petitioner were returned to Washington, D. C. as a parole violator, the Board of Parole would not consider any application for release until he had served at least two years. The letter continued:

"It would further appear to [the writer] that inasmuch as Scott is charged with additional violations notwithstanding the fact that he is now on trial for manslaughter First Degree there is little possibility that the Board entertain such a petition from Scott for at least a period of five years, and this, of course, does not mean that at that time our Board would act favorably upon his request."

On March 13, 1963, the day this letter was sent, and before the trial judge or the defense attorney had an opportunity

to read it, the defendant appeared before the trial judge with his attorney and withdrew his earlier plea of not guilty to manslaughter in the first degree. He then pleaded guilty to manslaughter in the second degree.

Pursuant to Section 335–c of the New York Code of Criminal Procedure, the court warned the defendant of the possible effect of his prior conviction. Then the court said:

> "Now, so that the record may have it clear, there have been some discussions with your attorney and the assistant district attorney relative to the fact that you, by your acts as alleged in this indictment and by your plea, it might amount to a violation of your parole in the State—in Washington, D. C. You are aware of that?"

To this, the petitioner responded affirmatively. The court, after confirming the petitioner's desire to spend time in Washington near his family, said:

> "Your attorney has indicated to me that he's getting some correspondence from the correction or prison officials in Washington, D. C., which will indicate to the court what action they are going to take and he's going to submit that to me and after I have had this documentary evidence I will then have to make a determination as to whether or not I can send you back or whether you should go to Attica here in this state, are you aware of that?"

After the petitioner again responded affirmatively, the following colloquy occurred:

> "THE COURT: In other words, I am not telling you now and I have not told your attorney or the assistant district attorney that you are under all conditions, under all circumstances going back to Washington, D. C. That might not happen.
>
> THE DEFENDANT: Yes.
>
> THE COURT: You are aware of that?
>
> THE DEFENDANT: Yes, sir.

THE COURT: It might well be, after reviewing the papers and probation investigation that I might feel that the interest of justice might be served by your being sentenced to serve your term here in New York State.

THE DEFENDANT: Yes.

THE COURT: Now, with that explanation do you want to say anything?

THE DEFENDANT: Well, I don't guess I have anything to say.

THE COURT: Has everything I said been understandable to you?

THE DEFENDANT: It's been understandable to me.

THE COURT: Does it fairly and accurately represent the discussions that you have had with your lawyer and your understanding?

THE DEFENDANT: Yes, sir. But may I say this?

THE COURT: Yes.

THE DEFENDANT: I don't think anyone is justified in taking a life but in this particular incident I was reluctant to enter a plea, sir, but I have been advised by my legal counsel and I think he was in better position to know than I.

THE COURT: Has any undue influence—

THE DEFENDANT: No, sir, none whatsoever.

THE COURT: —been exercised upon your will?

THE DEFENDANT: None whatsoever.

THE COURT: Are you being forced to do this?

THE DEFENDANT: No.

THE COURT: This entering of this plea is your—

THE DEFENDANT: My decision.

THE COURT: And your conclusion that it's the proper way out of the whole thing?

THE DEFENDANT: Yes, I would say that.

THE COURT: All right, now, you stand charged with manslaughter in the 2nd degree. How do you plead, sir?

THE DEFENDANT: I plead guilty, sir."

On April 1, 1963, when the defendant and his attorney appeared for sentence, the attorney, at the request of his client, made an application to withdraw the plea of guilty. The attorney said that Scott "had some misgivings as to where he might be sent on sentencing." The defendant then said: "Your Honor, in the beginning I was reluctant to enter a plea; I was apprehensive about it in all due fairness." At that point the court permitted the attorney and the defendant to confer privately. After this conference the following statement was made by the lawyer:

"If it please your Honor, after having a few minutes to confer with my client he explains to me that he is innocent of this charge; that it's not his intention to plead guilty to it and that he does not believe that he is guilty and that he feels that there were misrepresentations which I am most embarrassed and feel most badly."

"THE COURT: What misrepresentations were made to you Mr. Scott?"

Then the defendant made a statement to the court, contending that he acted in self-defense, but that he pleaded guilty upon the advice of counsel. The court reviewed what had happened on March 13, 1963, the day of the plea, stating:

"THE COURT: All right, now, we went over all this when you made your application for a plea in front of me and I asked you questions as to—

THE DEFENDANT: Yes.

THE COURT: —whether you were doing this voluntarily, freely, without any coercion or any promises made to you and the only thing that was expressed on the record at that time was whether or not this court would exercise its discretion and might suspend sentence so that you might serve out the remaining time that you have got to serve in Washington, D. C. I think I made it perfectly clear to you at that time and Mr. Fahringer was here that my decision would be made after I received a probation investigation and after some correspondence with the Washington authorities and there were no promises made to you at that time that this court would send you to Washington to finish out your term. You agree with that?

THE DEFENDANT: That's true, sir."

Following this, the court refused to permit a withdrawal of the plea and imposed sentence.

On April 2, 1963, the day after the sentence, Mr. Fahringer, the defendant's lawyer, wrote to Judge Marshall, requesting him to reconsider his denial of the application to withdraw the guilty plea. In the letter he pointed out that he "prevailed upon [Scott] with some vigor to enter a plea of guilty because I felt he would be sent to Washington." The attorney claimed that he had been assured by the Washington parole authorities that they would inform the court that Scott would be detained in Washington for at least five years. The trial judge again refused to permit withdrawal of the plea.

■ The court finds that the petitioner's retained counsel made misrepresentations to the defendant concerning the sentence which the petitioner would receive if he pleaded guilty, that the petitioner relied upon these misrepresentations in pleading and, therefore, his plea of guilty was not voluntarily made.

At the hearing, the petitioner testified that he pleaded guilty upon the assurance of his lawyer that either he would be given a suspended sentence and returned to Washington, or that he would

be allowed to withdraw his plea of guilty. His attorney's testimony confirmed this:

"Q. Was he not given the assurance, —the reassurance that if the disposition did not work out he could always withdraw his plea?

A. Oh, yes, I told him that. I indicated to him after we entered the plea, and as a matter of fact, I might have said it before he entered the plea that if he had any misgivings I thought we could apply,—we would be permitted to withdraw the plea."

and further:

"A. Yes, I did understand the law to be he could withdraw his plea up until any time he was sentenced.

Q. I am sorry if I said 'after sentence'. It was his understanding in the alternative if he wasn't going to be sent to Washington, D. C., that after sentence he could always withdraw his plea. That was Mr. Scott's understanding of this whole arrangement?

A. Absolutely."

To determine whether or not this plea was voluntary, the inner workings of Scott's mind at the time of making the plea must be determined. The "totality of all the surrounding circumstances" must be considered. United States v. Miller, 243 F.Supp. 61, 63 (E.D.Pa.1965), aff'd, 356 F.2d 515 (3d Cir. 1966), cert. denied 384 U.S. 981, 86 S.Ct. 1882, 16 L.Ed.2d 691. A review of all the circumstances in this case points to the conclusion that the plea was involuntary.

Scott had already served a number of years on the murder conviction and it would be reasonable for him to expect further time if he were convicted on the manslaughter charge. Therefore, he had nothing to gain by a plea unless he could get a lighter sentence.

An analysis of the proceedings before Judge Marshall and of the testimony before this court shows that he had good reason to expect a suspended sentence. The substance of the conversations between Mr. Fahringer and the trial judge in chambers was not brought to the attention of the petitioner. In chambers the judge told the attorney that he would suspend only if he were assured that Scott would serve at least five years in Washington. In the courtroom the judge only told the defendant that he would not make up his mind about suspending sentence until after he had received the information from the Washington Parole Office.

It is true that the trial judge did tell the petitioner that he had not told petitioner's attorney that he would go back to Washington "under all conditions, under all circumstances." But nowhere in the court proceeding was there any explanation of what the "conditions" or "circumstances" were which would permit his return. Because of this lack of explanation the petitioner was entitled to rely upon his attorney's representation. The attorney told him that the trial judge would suspend sentence and return him to Washington and, if the judge did not do this, Scott could withdraw his plea. In offering his plea, Scott relied upon the representations of his attorney. His reliance upon his attorney was made clear on the day of the plea making:

"THE DEFENDANT: I don't think anyone is justified in taking a life but in this particular incident I was reluctant to enter a plea, sir, but I have been advised by my legal counsel and I think he was in better position to know than I."

There is more to this case than mere surprise at the severity of a sentence [United States v. Shneer, 194 F.2d 598, 600 (3d Cir. 1952)], or the opinion of defense counsel of the likely sentence [United States v. Johnson, 269 F.Supp. 767 (S.D.N.Y.1967)], or a case based only upon the unsupported statement of a dissatisfied defendant [United States ex rel. Finn v. Klein, 271 F.Supp. 513 (S.D.N.Y.1967)]. The circumstances surrounding the plea are fortified by the embarrassed admissions of defense counsel made not only on the day of sentence, that defendant "understood he was going to Washington," but further confessed in the attorney's letter to the court

on the day after the sentence. The plea made here was involuntary and must be vacated. See United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508 (E.D. N.Y.1967).

The court expresses its thanks for the assistance of H. Kenneth Schroeder, Jr., counsel for the petitioner. The court regrets that present statutes do not permit payment of attorneys' fees in a habeas corpus proceeding.

Since the judgment of conviction and sentence was procured in violation of the constitutional rights of Charles F. Scott, the writ is sustained and the judgment of the Erie County Court vacated. The petitioner shall promptly be returned to the custody of the Sheriff of Erie County for further proceedings on the indictment of November 30, 1962. If such proceedings are not properly undertaken within a reasonable time, the petitioner may make further application to this court.

The court certifies that there is probable cause for appeal. Title 28, United States Code, Section 2253.

Permission to the petitioner to proceed in forma pauperis with respect to any appeal that may be taken is granted.

So ordered.