UNITED STATES of America ex rel. Melvin OLIVER, Petitioner-Appellee,

v.

Leon VINCENT, Warden of Green Haven Correctional Facility, Respondent-Appellant.

No. 307, Docket 73–2246.

United States Court of Appeals, Second Circuit.

Argued April 5, 1974.

Decided June 3, 1974.

Frederick H. Block, New York City, for petitioner-appellee.

Michael Colodner, Asst. Atty. Gen. of New York, with whom Louis J. Lefkowitz, Atty. Gen. and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, were on the brief, for respondent-appellant.

Before HAYS and OAKES, Circuit Judges, and CHRISTENSEN, Senior District Judge.*

* Of the District of Utah, sitting by designation.

CHRISTENSEN, Senior District Judge:

There is before us for review an order of the district court granting a writ of habeas corpus to a state prisoner, hereinafter "petitioner", who had been sentenced to a ten-year term on a plea of guilty found below to have been induced by his attorney's false assurances that an agreement had been reached for the imposition of a more favorable sentence.

Decided after the proceedings below were concluded Mosher v. LaVallee, 491 F.2d 1346 (2d Cir. 1974), cert. denied, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974), affirming, 351 F.Supp. 1101 (S.D.N.Y.1972), involved surprisingly similar circumstances.[1] This decision would render any discussion of the governing principles and other cases superfluous and would justify affirmance of the order in question without extended comment were it not for two contentions principally relied upon here and not considered there: that the district court "erred in ordering an evidentiary hearing in the face of implicit findings of credibility [against petitioner] by the State court judge", and that "the petitioner could not credibly believe that any such promise was made" as represented by his attorney.

In proceedings in the Supreme Court, New York County, petitioner was indicted in September, 1968, for robbery in the first degree, grand larceny in the second degree, and felonious possession of a weapon, and there were other state charges pending against him. He had also been indicted by a federal grand jury, pleaded guilty in October of that year on two counts and was sentenced in November to federal prison for two consecutive two-year terms.

In December, 1968, petitioner declined an "offer" of the prosecution to satisfy all state indictments in return for a plea of guilty to a "class C" felony to be treated as a "class D" felony.[2] He later testified that his refusal to so plead was because his retained attorney had assured him that a "deal" would be worked out for a sentence in the state court to run concurrently with, and not to exceed, his four-year federal sentence. On Friday, January 10, 1969, petitioner again declined to plead guilty to a "class C" felony apparently for the same reason. However, the following Monday petitioner did plead guilty to the Class C felony of attempted robbery in the first degree, for which on February 4, 1969, he was sentenced to an indeterminate term of not exceeding ten years, without reference to his federal sentence.[3]

Petitioner maintained in the habeas corpus court that he agreed so to plead

---

1. At p. 1348 of 491 F.2d it was stated that "[t]he instant case is the rare one—unique in this Circuit so far as we know—where after an evidentiary hearing the district court has made a finding based on substantial evidence that the state prisoner has sustained his burden of proving that the circumstances as they existed at the time of the guilty plea, *judged by objective standards*, United States ex rel. Curtis v. Zelker, *supra*, 466 F.2d [1092] at 1098, reasonably justified his mistaken impression [emphasis in original] . . . ." But in the present case, on contentions arising and recorded in the state court long before our decision or that of the district court in *Mosher* was published, we find similar facts are found supporting the grant of habeas corpus by a district court, and based on objective standards reasonably justifying the petitioner's mistaken impression. In both cases there were multiple indictments pending against the petitioners. In each case the trial judge concluded that the petitioner's assurance to the state court at the time of the acceptance of his plea that no promises had been made to him did not overcome the evidence to the contrary, the trial courts recognizing heretofore unregulated pressures which unhappily but not uncommonly have induced such assurances. See Hilliard v. Beto, 465 F.2d 829 (5th Cir. 1972).

2. Under New York law a class C felony is punishable by an indeterminate term of imprisonment to be fixed by the court but not exceeding fifteen years, a class D felony by such a term not exceeding seven years. Art. 70, Sec. 70.06, New York Penal Code, McKinney's Consol.Laws, c. 40.

3. In light of the state sentence and upon petitioner's motion, the execution of the federal sentence was suspended on June 29, 1969, and he was placed on probation for four years to commence upon expiration of the state court sentence.

guilty only after he was assured by his attorney that the "deal" described above had been arranged with the prosecutors and the judge. He further testified that a comment by his attorney following this plea caused him to become worried that his lawyer actually might not have closed the arrangements. Thereafter, but prior to the imposition of sentence, he unsuccessfully attempted to withdraw his plea, and when he appeared for sentencing the state justice acknowledged the withdrawal request but did not afford him an opportunity to state his supporting reasons. On appeal his sentence was vacated and he was remanded to the sentencing justice for resentence by reason of the denial of his right of allocution and particularly for his having been "cut off" from his application to withdraw his plea of guilty. People v. Oliver, 34 A.D.2d 775, 310 N.Y.S.2d 689 (1st Dept. 1970).

Prior to resentencing in October, 1970, the state justice heard statements from the petitioner concerning his reason for wishing to withdraw his plea, consistent with his later testimony before the habeas corpus court, together with contradicting statements from his attorney. No findings concerning petitioner's claim were made but an evidentiary hearing was ordered, and a new attorney who had been assigned to represent petitioner was directed to file a written motion for leave to withdraw the plea of guilty. Such a written motion was not filed. In April, 1971, petitioner was resentenced, *nunc pro tunc*, as of February 4, 1969, to the same term of not to exceed ten years, over his objection that his request to withdraw his plea had not been heard. The Appellate Division unanimously affirmed on April 18, 1972, People v. Oliver, 39 A.D. 2d 646, 331 N.Y.S.2d 587 (1st Dept. 1972), and leave to appeal to the New York Court of Appeals was denied on July 12, 1972.

Appellant insists that in view of 28 U.S.C. § 2254(d),[4] the state court proceedings somehow obviated any necessity of an evidentiary hearing in the habeas corpus court, justify our disregard of the latter court's findings and, indeed, rendered the holding of an evidentiary hearing by that court in itself error.

Even though no evidentiary hearing was had in the state court on the issues of voluntariness of the plea and the effective assistance of counsel, appellant argues in effect that the requirements of Section 2254(d) must be deemed satisfied because no formal motion or affidavit was filed as directed by the state justice and because it was obvious without such a hearing that the sentencing court credited the explanation of the attorney rather than the claims of the respondent. A variation of the latter theme is the contention in reliance upon United States ex rel. Robinson v. Fay,

4. "**§ 2254.** *State custody; remedies in Federal courts*

   .    .    .    .    .    .

"(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court . . . evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

"(1) that the merits of the factual dispute were not resolved in the State court hearing;

"(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

"(3) that the material facts were not adequately developed at the State court hearing; . . . .

"(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; . . . .

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent . . . the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous. . . . ."

348 F.2d 705 (2d Cir. 1965), cert. denied, 382 U.S. 997, 86 S.Ct. 583, 15 L. Ed.2d 484 (1966), that a federal court is not obliged to hold a habeas corpus hearing where the state court has credited an attorney rather than his felon client. Granted that under some such circumstances a federal evidentiary hearing is not mandated, this does not answer the question whether a hearing properly may be held by a federal court should it elect to do so.

For the district court to hold an evidentiary hearing was not error *per se*. Irrespective of whether the conditions of 28 U.S.C. § 2254(d) have been met, a federal court is not precluded from holding such a hearing to determine whether the claims of a petitioner raising as here, a substantial issue of fact can be established by the requisite degree of proof.[5] If the presumption of correctness of state findings applies they can be overcome only by clear and convincing evidence; if no presumption operates, a petitioner has the burden of proving his case by a preponderance of the evidence. Here the conditions were not met since there had been no state "determination after a hearing on the merits of a factual issue . . ." (§ 2254(d)), resolving such factual issue (§ 2254(d)(1)) by a fact finding procedure "adequate to afford a full and fair

hearing" (§ 2254(d)(2)), adequately developing the material facts (§ 2254(d)(3)), and affording the petitioner a full, fair and adequate hearing (§ 2254(d)(6)).

Appellant contends that the petitioner waived an evidentiary hearing on the issue of the voluntariness of his plea because his counsel failed to file the written motion as directed by the state justice. This point relates more to an unraised question of the exhaustion of state remedies than to the effect of the state court determination upon, or the propriety of, the federal evidentiary hearing in view of § 2254(d). If there were no state hearing on the merits of a factual issue, whether waived or not, a condition for the presumptive correctness of state court findings based on such a hearing would not be satisfied, even though habeas corpus relief in the district court might be barred for failure to exhaust state remedies. But we think the trial court's determination that there was no such waiver or failure is not clearly erroneous and should stand.[6] Although the state justice indicated that Oliver's own lack of cooperation with his attorney contributed to the latter's failure to file the written motion, there are indications in the record to the contrary upon which it was within the province of the habeas corpus judge to rely.[7]

5. LaVallee v. Rose, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973) ; compare United States ex rel. Williams v. LaVallee, 487 F.2d 1006, 1011 (2d Cir. 1973), cert. denied, 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed. 2d 118 (1974).

6. "Now, you mentioned that [the state judge] never ruled on this, and that raised a question of whether it was either waived by [Oliver's attorney], and although the government and the Attorney General have not raised that question, I have considered it, and I have concluded that there was no waiver before the state courts, and that the circumstances are such that the doctrine of exhaustion of remedies, which, in my view, the Attorney General probably did not raise, would not be appropriate." The district court in setting the case for an evidentiary hearing had stated theretofore that "petitioner has apparently exhausted his state remedies". The appellant at no time has

questioned this insofar as the record disclosed.

7. Oliver testified at his resentencing on April 20, 1971, that his attorney had made only one attempt to prepare an affidavit which apparently he desired in support of the motion and that when Oliver declined to sign the first draft and made suggestions for its modification the attorney not only ignored the suggestions and failed to submit the affidavit, but refused to communicate further with him until they met each other in court at the resentencing proceeding. The attorney did not directly refute this testimony but denigrated Oliver's suggestions and said that "[t]here have been communications and correspondence [from Oliver] that have not immediately been answered but at some subsequent date that communication or correspondence has been incorporated in some sort of response." These circumstances, and the resolution by the trial judge of debatable is-

Thus, if by appellant's "incredible" argument is meant that there was insufficient credible evidence of the counsel's false representations to support the trial court's findings [8] we reject it.[9] If appellant's initial statement of the question (p. 2 of appellant's brief), apparently concerned rather with claimed incredibility of any reliance by petitioner upon the representation of his attorney,[10] is to be taken as the point, it becomes more troublesome.

■ The petitioner when he entered his plea was not a novice in criminal proceedings, and the evidence suggests that in some ways he was relatively bright. The oral argument in support of the latter version of the contention was that no matter what his attorney may have represented to him he should have known better. Undeniably the claimed deal for the state to waive a number of other indictments in return for his plea of guilty to a single charge involving the service of no time beyond the period of his federal sentence was an exceedingly good one for the petitioner under the circumstances. But for us to say contrary to petitioner's testimony, the circumstances supporting it, and the findings of the trial court, that in law or in fact he could not have relied upon his attorney's representation is another thing. We have concluded that the trial court's contrast of the attorney's situation with that of the petitioner [11] and

sues of fact in favor of, rather than against, the petitioner, distinguish this case from United States ex rel. Callahan v. Follette, 418 F.2d 903 (2d Cir. 1969).

8. Appellant's restatement of his second point and the argument in support of it found on pp. 20 et seq. of his brief so indicate: "Point II. Petitioner's plea of guilty was voluntary under all the circumstances in the light of no promise having been made by either the court or the District Attorney and in the light of the incredibility of the alleged promise."

9. Beyond petitioner's positive and consistent testimony of his attorney's representations and of his subjective reliance thereon, there was substantial independent proof. The testimony of petitioner's mother that the retained attorney in his demands for payments on his fee repeatedly assured her that her son would get no more than four years' imprisonment, the testimony of another attorney representing petitioner in the federal proceedings to whom the retained attorney stated on two different occasions that he was working in the state cases to get a sentence running concurrently with the federal sentence, petitioner's attempts to withdraw his plea of guilty beginning even before he was sentenced when he first received an indication from his counsel that the action of the court might not be in accordance with his understanding, and other circumstances shown by the record convince us that the requisite objective support is present in the record and that the trial court's findings are not clearly erroneous. Rule 52(a), Fed.R. Civ.P. Not without reason it commented: "My conclusion is that the defendant and his mother were testifying truthfully . . . and that Mr. Sena [the petition-

er's retained attorney] was not . . . Mr. Sena could never answer a question directly [and] . . . represented to me a frightening picture of hatred and contempt for his client . . . I think that the key to Mr. Sena's conduct was in Mrs. Oliver's testimony. She said, after retaining him, that she was constantly asking him what was going to happen, and he was constantly asking her for money . . . At which time he would always tell her 'Never mind. I'm going to get a concurrent sentence for him', as if he knew."

10. "2. Whether petitioner's plea of guilty was voluntary under all of the circumstances when he allegedly pleaded guilty to three unrelated felonies in reliance upon a promise of a four year sentence to run concurrently with an unrelated federal sentence where no promise was ever made by the Court or the District Attorney and where petitioner could not credibly believe that any such promise was made?"

11. "Now, I must say that it is wholly unreasonable for any lawyer to think that he could have obtained a concurrent sentence of four years in this situation in New York County.

"I base that on my familiarity with how they operate in New York County with a criminal record that this defendant had . . . but . . . of course, the defendant is not charged with knowledge of what goes on in the District Attorney's Office, but Mr. Sena, I believe, would be.

"Now, also, the second impressive thing on the probabilities is the fact that this distinguishes this case from practically any other that I am aware of, the fact that a defendant might do this or would wait until after

the testimony supporting the implicit finding of reliance were not unreasonable, much less incredible, and should stand along with the other factual determinations of the trial court.

In granting the writ Judge Knapp directed "that the relator be discharged unless we can have it retried by the state court within a period of sixty days." Appellant complains that this limitation would afford insufficient time to prepare for trial, and in the same breath suggests that, by reason of prior delay occasioned by the proceedings thus far, proof of the offense may now be difficult to marshall. It is also suggested that, if the writ stands, the state should at least have the option of resentencing petitioner to the four years which he understood he was to receive, to which his present counsel indicated in oral argument that he would have no objection.

Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) involved a remand with directions that the state court either allow a petitioner to withdraw his plea and stand trial or grant specific performance of the agreement which had induced the plea. But the present case is not one of a breached prosecutorial promise and a plea induced by that promise, as in *Santobello*, but rather a false representation by petitioner's counsel that a promise had been made, and a plea induced by that representation. Under the latter circumstances the district court with our approval in *Mosher* adopted, 351 F.Supp. at 1111–1112, a solution similar to that suggested by appellant here. Yet there are enough distinctions in the circumstances of the two cases [12] to persuade us to accept here, as was done there, the variant discretion of the court below.[13]

Effective upon the filing of the mandate the stay heretofore granted is vacated and the order of the district court is affirmed.

---

he saw what the sentence was, this defendant did not wait until after he saw what the sentence was to express his desire to withdraw his plea. He expressed it immediately after he left, and the first person that the record shows that he spoke to besides Mr. Sena was the probation officer, and he immediately told the probation officer that he wanted to withdraw his plea."

12. According to the uncertain record before us the four-year term already would have been substantially served. The present suggestion was not presented to the court below when there would have been more point to it. If the appellee's guilt is as manifest as appellant has represented it may not be against the public interest for the state, relieved of the bargain foisted upon it by petitioner's counsel, to endeavor to establish the accountability of petitioner independently of it. In fact the court below cautioned the petitioner against the possibility as a result of trial of a sentence greatly in excess of ten years should the writ be granted and the decision affirmed on appeal; the petitioner stated that he so understood. See also Santobello v. New York, *supra*, opinion of Mr. Justice Marshall, with whom Mr. Justice Brennan and Mr. Justice Stewart joined, concurring in part and dissenting in part, 404 U.S. at 267, 269.

13. We consider it implicit in the trial court's order in light of our stay that the 60 day time limit will not commence to run until the filing of our mandate, and that the period of any obstruction of an expeditious trial caused by the unavailability or unreasonable conduct of the petitioner is not to be counted.