Edward J. McALENEY,
Petitioner-Appellee,

v.

UNITED STATES of America,
Respondent-Appellant.

No. 76–1184.

United States Court of Appeals,
First Circuit.

Argued June 3, 1976.

Decided Aug. 13, 1976.

---

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

The United States is appealing from a judgment of the district court allowing McAleney's motion under 28 U.S.C. § 2255 to vacate his guilty plea and the judgment of conviction and commitment that was thereafter entered upon the plea. McAleney alleged, and the court in substance found after hearing, that his plea was involuntarily made, having been induced by the representation of his attorney, Norman MacKay, that the Assistant United States Attorney, Michael Collora, had agreed to recommend to the judge a three-year term of imprisonment. The Government in fact made no recommendation to the judge, and a seven-year prison sentence was imposed.

At the initial hearing on the section 2255 motion, McAleney and two friends testified that he pled guilty on his attorney's representation that government counsel would recommend three years. MacKay then testified, and admitted to making the representation to his client, saying that he had understood from conversations with Collora that the Government would, in fact, so recommend. Although not available at the time of the section 2255 hearing, Collora filed an affidavit denying that he had agreed to any such recommendation, and the Government sought a continuance so that Collora could testify. The court ruled, however, that the issue was "not what Mr. Collora said; it is what [McAleney's] own attorney MacKay said to him as a result of discussions he had with the Assistant United States Attorney". The court concluded, "when McAleney changed his plea he did so on the basis that he assumed the Government would be recommending a three-year sentence of imprisonment in his case to Judge Caffrey". On the basis that McAleney was induced to plead as the result of his attorney's advice that a promise had been made, the court allowed the motion to vacate.

The case was argued to us in this posture, but before deciding we remanded in order

William A. Brown, Asst. U. S. Atty., Chief, Civ. Div., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief for appellant.

Edward F. Harrington, Boston, Mass., with whom Gargan, Harrington, Markham & Wall, Boston, Mass., was on brief, for appellee.

to obtain Collora's testimony and for supplemental findings thereon. We believed that the Government's role in the misunderstanding was an issue too important to be left dangling, not merely because of its possible bearing on McAleney's right to plead over but also because of the responsibility of the district court and ourselves to see that government and defense counsel adhere to acceptable standards in the plea bargaining process, the integrity of which is of paramount significance in the administration of criminal justice.

At the second hearing, held before the same district judge, Collora testified and MacKay again testified. The court found that Collora had informed MacKay, prior to McAleney's plea, that the judge before whom McAleney's criminal case was pending had a policy that he would only accept a recommendation from the prosecutor of jail or no jail, and not of a specific term of years. The court noted that MacKay "could not remember" Collora's so informing him; that MacKay was not acquainted with the judge's policy; and that MacKay had never before tried a case to final verdict in the federal court. The court went on to find that Collora, upon being pressured by MacKay as to what he thought McAleney would get, "shrugged his shoulders, raised his hands, and ventured his personal opinion that, because of McAleney's health situation, if brought to the court's attention, he might get three to five years in prison." MacKay, the court found, "transmitted Collora's personal response to his client, and the plea then followed". The court added that Collora had not meant to mislead MacKay and his client.

■ Subject to the alternative relief described below, we affirm the district court's judgment vacating the plea and sentence. We must accept the court's findings of fact if they are not clearly erroneous, and on this record we have no reason to dispute the findings made. Fed.R.Civ.P. 52(a). *Zovluck v. United States*, 448 F.2d 339, 341 (2d Cir. 1971), *cert. denied*, 405 U.S. 1043, 92 S.Ct. 1327, 31 L.Ed.2d 585 (1972). We recognize that the district court's supplemental findings arguably weaken its earlier findings by speaking of MacKay transmitting Collora's "personal response" to McAleney, rather than transmitting the Government's alleged agreement to recommend a three-year term. But at the second hearing MacKay stood by his previous testimony that he told McAleney that Collora or "the United States Attorney's Office" would recommend three or three to five years; and we assume that if the district court had meant to alter its original findings in this regard it would have done so directly. By transmission of Collora's "personal response", we understand the court to mean not that MacKay told McAleney that the prosecutor had expressed a personal opinion, but that by the time the message reached McAleney's ears MacKay had translated Collora's opinion into the promise earlier found.

■ This, of course, is the crux of the case, because if the only message transmitted had been that Collora opined that the judge would give three to five years, McAleney would have no grounds for relief. *Calabrese v. United States*, 507 F.2d 259 (1st Cir. 1974). Even if MacKay and his client became utterly convinced in their own minds that the lesser sentence would be given, McAleney would have no present claim absent transmission by his attorney of an alleged government promise. But once we assume, as the court found, that MacKay, a member of the bar and officer of the court, relayed word to his client that the prosecutor had promised to make a specific recommendation, the picture changes. McAleney was entitled to credit his attorney's representation as to the fact of such an agreement, and to rely on it; and if his guilty plea was in fact induced by such a representation, we agree with the district court that relief is in order. The case is squarely controlled by our decision in *United States v. Pallotta*, 433 F.2d 594 (1st Cir. 1970), where we said,

"... [D]efendant alleges that he was informed about the United States Attorney's promise [to make a verbal recommendation that defendant be sen-

tenced to ten not twelve years imprisonment] indirectly by his own counsel. A 'mere prediction by counsel of the court's likely attitude on sentence, short of some implication of an agreement or understanding, is not ground for attacking a plea.' *Domenica v. United States*, 292 F.2d 483, 485 (1st Cir. 1961). Here, however, defendant alleges that his counsel purported to speak on behalf of the United States Attorney; that 'a "working agreement" had been formulated by the defense counsel and the United States Attorney and that said agreement was breached and disavowed by both parties concerned.' *See Machibroda v. United States*, 368 U.S. 487, 489, 82 S.Ct. 510, 7 L.Ed.2d 473 . . .. Even if no 'working agreement' existed in fact, the voluntariness of defendant's guilty plea would be seriously in question if it was induced by representations of court-appointed counsel [1] that such an agreement was in effect. *See United States ex rel. Thurmond v. Mancusi*, 275 F.Supp. 508, 516 (E.D.N.Y.1967)."

433 F.2d at 595. *Compare United States v. McCarthy*, 433 F.2d 591 (1st Cir. 1970).

The Government argues that there is a difference between an alleged government promise to recommend a sentence, and a representation that an accused will get a particular sentence. But in *Pallotta* we also had before us an alleged promise to recommend a sentence; and a defendant would rightly see such a promise as likely to exert a powerful, even if not necessarily a conclusive, effect. *See United States v. Paglia*, 190 F.2d 445, 447 (2d Cir. 1951), *overruled on other grounds, United States v. Taylor*, 217 F.2d 397 (2d Cir. 1954) (L. Hand, J.).

The Government's strongest argument is that a Rule 11 hearing took place during which McAleney, with MacKay at his side, responded "no" to questions whether anyone coerced or pressured him to plead, whether anyone made "any promises or extenuating inducement", and whether "any plea bargaining [took] place". We said in *McCarthy*, however, that most defendants could be expected to deny "any impropriety" during the Rule 11 hearing, 433 F.2d at 593 & n. 3, and we cannot now say that it would be obvious to a poorly counselled defendant that he should mention a supposed "deal" with the Government, no matter how proper, in response to these particular questions. His attorney, of course, should have known better how to respond. *Mawson v. United States*, 463 F.2d 29 (1st Cir. 1972). Also, the Assistant United States Attorney might have found it more prudent, in view of his conversations with MacKay, to spell out on the record what the Government had and had *not* said, *e. g.*, that he had informed counsel of the court's policy not to accept a recommendation concerning a specific term, etc. Moreover, we note that the court's Rule 11 questions were not framed as we required in *Mawson*. In *Mawson* we directed courts to inquire specifically "whether any promise was made with respect to recommending a sentence, either by the Assistant U. S. Attorney to United States Attorney or by or on behalf of the United States Attorney to the court." [2] *Id.* at 31. Had they been so framed (rather than simply asking whether or not "plea bargaining" had taken place), more information might have been forth-

---

1. MacKay was privately retained, not court-appointed, but we see no basis for distinction on that score.

2. We also note that subsequent to McAleney's Rule 11 hearing, the procedures required of a judge before accepting a guilty plea were particularized along lines reminiscent of those in *Mawson*.

    Rule 11(d) now reads in part,
    "The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discus-
sions between the attorney for the Government and the defendant or his attorney."
A specific negative response by McAleney to a question framed precisely in these terms would probably have foreclosed relief now. The question asked—whether "any plea bargaining [took] place"—is considerably more open to interpretation, since the term "plea bargaining" has a variety of connotations, and a layman might not necessarily know that a government promise *to recommend a particular sentence* was a "plea bargain".

coming, and negative answers by the defendant would have seriously undermined his present claim.

In *Fontaine v. United States*, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1972), the Supreme Court speaking, it is true, of an uncounselled Rule 11 proceeding, remarked that while the purpose of such a hearing "is to flush out and resolve all such issues, . . . like any procedural mechanism, its exercise is neither always perfect nor uniformly invulnerable . . . ." *Id.* at 215, 93 S.Ct. at 1462. In the present situation, the Rule 11 proceeding did not flush out and cure the problem created by MacKay's incorrect transmission of the supposed government promise. To be sure, McAleney seemingly should have realized by the time of sentencing that the supposed promise was not being carried forward. However, given especially the inadequacy of representation, it does not seem appropriate on these facts to place the burden of speaking out on McAleney; even though no stranger to the courts, McAleney might have been relying until the last upon his supposedly knowledgeable attorney.

While we therefore substantially affirm the judgment below, we think the relief afforded should be tailored in one respect not dealt with below or by the parties. McAleney was relieved from his plea even though the Government's supposed promise went only to the recommended sentence. This places a potentially greater burden on the Government than had it actually reneged on a promise: in the latter instance we have limited relief to resentencing before a different judge to whom the omitted recommendation must be made. *See, e. g., Mawson, supra*, 463 F.2d at 31. This anomaly cannot, in a sense, be avoided here, since where the Government made no promise, it may not be compelled to recommend a three-year sentence; and under such circumstances McAleney must be free either to insist upon a trial or plead over. But we think the Government should be given, as an option, the right to elect to have the plea stand and to have McAleney resentenced by the judge before whom the section 2255

proceeding is pending, provided the Government can in good conscience now recommend a three-year term and the judge is willing to allow such a non-binding recommendation to be made in the course of the new sentencing proceeding. If so, McAleney will obtain all he says he was promised and can then have no right to withdraw the plea. Upon remand, therefore, the Government may elect to follow this course if in its judgment, and with the court's concurrence, it believes it to be in the interest of justice to do so. Otherwise the plea and judgment must be vacated, and of course if upon new trial or plea there is then a conviction, the Government need make no recommendation or may make a different one.

We regard the conduct of defense counsel in this case as a matter which should not be dropped without final resolution, either in the district court or in some suitable proceeding elsewhere. The public and the courts are seriously burdened when because of the avoidable errors of counsel, defendants are relieved from guilty pleas. Here the district court's action, and our affirmance, is premised on the central assumption that such an error was made—that the accused was misinformed by his privately retained counsel as to what the Assistant United States Attorney had said. Either the mistaken information was transmitted wilfully or incompetently—in which case the attorney's continued license to practice in the district court must be carefully considered—or else there were extenuating circumstances which, in fairness to MacKay, should be made known. There is also to be entertained the possibility of perjury and collusion aimed at upsetting the original sentence.

Under the new guidelines and procedures stated in the revised Rule 11, defense counsel as well as prosecutors bear heavy duties to their clients and the court. We believe that when an attorney makes a significant representation of fact to his client, such as of a promise by the Assistant United States Attorney and the terms of that promise, the client is entitled to believe him. If this assumption cannot be indulged, the

negotiations sanctioned under Rule 11 will be seriously impeded. There is accordingly a duty on attorneys to make sure whenever participating in plea bargaining proceedings, which are under the close scrutiny of the court, that any information they convey to their client is accurate and complete and that they understand what the applicable law and rules are. Failure to adhere to professional standards in this regard is no minor imperfection, and in our view constitutes grounds for questioning an attorney's continued fitness to represent clients in the federal courts. We leave it to the district court or other appropriate authorities to complete the investigation and take any action called for in this case.

*Affirmed unless within thirty days the United States elects to proceed as set forth herein, in which event the case is remanded for further proceedings consistent herewith.*