Ricardino SANTOS, a/k/a Richardino Santos

v.

William E. LAURIE, Jr., Assistant Director of Adult Services.

Civ. A. No. 75-0374.

United States District Court, D. Rhode Island.

June 6, 1977.

John E. Farley, Providence, R. I., for plaintiff.

Judith R. Wegner, Sp. Asst. Atty. Gen., Providence, R. I., for defendant.

## MEMORANDUM AND ORDER

PETTINE, Chief Judge.

Petitioner Ricardino Santos seeks a writ of habeas corpus. He contends that his convictions for second degree murder of his wife and assault with a deadly weapon on his brother-in-law were illegal because the guilty pleas on which they were entered were not knowingly and voluntarily made. He alleges that he relied on a statement made by his attorney that the state had promised to recommend a sentence of not more than 15 years incarceration, a recommendation which was never in fact made.

The guilty pleas were entered on November 23, 1970. On January 7, 1971, Santos received a twenty-five year sentence on the second degree murder charge, and a deferred sentence on the assault count. The available state remedies have since been exhausted in three separate proceedings raising the same claims presented here. Rhode Island Superior Court Justice Bulman, who took the plea, denied a writ of error coram nobis on January 4, 1973, after oral argument but without an evidentiary hearing. After acquiring new counsel, Santos then sought habeas corpus in the Superior Court, and this was denied by Justice Gallant on July 3, 1974 after a full evidentiary hearing. In *de novo* proceedings, the Rhode Island Supreme Court denied Santos' habeas petition without hearing or opinion. 332 A.2d 439 (R.I.1975).

The parties have jointly provided the Court with a full record from the proceedings below, including transcripts of the taking of the plea, the hearing on the writ of error coram nobis, and the full evidentiary hearing on the Superior Court habeas corpus proceeding. The matter has been fully briefed, and the Court has not found it necessary to hold an evidentiary hearing.

### I

After hearing testimony and considering the transcripts of earlier proceedings, Justice Gallant stated:

On the basis on the credible evidence, I find that:

1. No commitment was made by any responsible State official that the State would recommend a sentence of 10 to 15 years contingent upon the petitioner's plea of guilty to a reduced charge of second degree murder.

2. Petitioner's counsel represented to him that the Attorney General would recommend, and he would receive a 10 to 15 year sentence if he pleaded guilty to a reduced charge of second degree murder, and that if the court did not follow the recommendation he would be allowed to reinstate his not guilty plea.

3. The petitioner was induced to plead guilty in a bona fide reliance on the foregoing representations.

*Santos v. Mullen,* MP No. 10374 (Superior Court, July 1–3, 1974). Transcript at 67–68.

Referring to the petitioner's response at the plea-taking, Justice Gallant observed:

When Mr. Santos pleaded on November 23, 1970, he told the court that there had been no inducements offered and that he was willing to take his chances on whatever sentence the court saw fit to impose. The facts must be taken into account in evaluating the petitioner's contention that he relied on Mr. Toro's assurances, and I have done so. I find them not to be controlling, however. Under the circumstances here, I am satisfied that Santos believed that his attorney had an agreement as to a recommendation by the Attorney General; that the court almost always followed such a recommendation; and that if it did not, he could reinstate his not guilty plea.

Transcript (July 1–3, 1974) at 68.[1]

Having found as a fact that Santos' defense counsel told him that the state had promised to recommend a 10–15 year sentence and to allow Santos to withdraw his plea if the recommendation by some chance was not accepted, Justice Gallant nevertheless denied Santos' habeas petition. He believed himself bound by Rhode Island decisional law, which precludes relief unless any assurances given a defendant by defense counsel can be objectively corroborated by the acts of state officials. In *State v. Welch*, 112 R.I. 321, 330–31, 309 A.2d 128, 133 (1973), the Rhode Island Supreme Court held:

> while mere advice or assurances of counsel as to a light sentence will not vitiate his client's guilty plea, a contrary rule should prevail if the counsel's statement amounts to an unqualified representation that some responsible state official such as a judge or a prosecutor has entered into a bargain to commit the state to give the defendant a lesser punishment than he might otherwise receive, in exchange for a plea, provided such representation is corroborated by the acts or statements of the responsible state official and there is a bona fide reliance thereon by the defendant.

Thus, under Rhode Island case law, a plea is voluntary even if it is entered in reliance on defense counsel's representation of prosecutorial promises, provided that state officials have not corroborated those promises by word or deed. Because the record evidenced no corroboration of any representations made by Justice Bulman or the prosecuting attorney, relief was denied.

 A federal court must apply federal constitutional law in habeas corpus proceedings, although it may apply that law to reliably found state facts. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), *Leavitt v. Howard*, 462 F.2d 992 (1st Cir. 1972). The corroboration rule of *State v. Welch* is decidedly not a correct reading of the constitutional requirements surrounding guilty pleas. In the ordinary case, where the state has made no promise, defense counsel will not misinform the defendant of that fact, and to that extent and in that sense the corroboration rule has a rough congruence with a court's normal expectations of adherence by attorneys to professional standards. But no *per se* rule can be applied, as the facts of this case illustrate. Here, Santos was definitely told by his attorney that the state had agreed to recommend a specific sentence, a recommendation that was not in fact later made. It is of no constitutional difference to Santos whether the promise was made and not kept, *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), or whether it was never in fact made, *United States v. Pallotta*, 433 F.2d 594 (1st Cir. 1970); *United States ex rel. Thurmond v. Mancusi*, 275 F.Supp. 508 (E.D.N.Y.1967). The critical question is whether or not the defendant's plea was knowingly and voluntarily made, not—as the corroboration rule would have it—whether or not the conduct of responsible state officials has been blameless. It is not only the misconduct of state officials which effectively deprives the defendant of rights of due process of law and effective assistance of counsel. On the basis of the facts established by Justice Gallant, Santos is entitled to relief.

This case cannot be distinguished from *McAleney v. United States*, 539 F.2d 282 (1st Cir. 1976) in any relevant respect.[2] In

---

1. *Compare McAleney v. United States*, 539 F.2d 282, 285 (1st Cir. 1976).

2. Respondent suggests that because *McAleney* arose under 28 U.S.C. § 2255, it may not be controlling here. However, the Supreme Court has repeatedly held that

> the remedy under § 2255 was designed to be 'exactly commensurate' with the federal habeas corpus remedy, *Swain v. Pressly*, 430

U.S. 372, ——' [97 S.Ct. 1224, 51 L.Ed.2d 411]; *Hill v. United States*, 368 U.S. 424, 427 [82 S.Ct. 468, 470, 7 L.Ed.2d 417]; *United States v. Hayman*, 342 U.S. 205, 219 [72 S.Ct. 263, 272, 96 L.Ed. 232], and has been construed in accordance with that design, e. g., *Sanders v. United States*, 373 U.S. 1, 6–14 [83 S.Ct. 1068, 1072–1076, 10 L.Ed.2d 148].

*Blackledge v. Allison*, —— U.S. ——, —— n.4, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977).

*McAleney,* defense counsel transmitted to the defendant a promise of a three-year recommendation by the government, a promise which had never been made. Affirming the district court's grant of relief, the First Circuit set forth the applicable law:

> [I]f the only message transmitted had been that [the prosecutor] opined that the judge would give three to five years, McAleney would have no grounds for relief. *Calabrese v. United States,* 507 F.2d 259 (1st Cir. 1974). Even if MacKay [defense counsel] and his client became utterly convinced in their own minds that the lesser sentence would be given, McAleney would have no present claim absent transmission by his attorney of an alleged government promise. But once we assume, as the court found, that MacKay, a member of the bar and officer of the court, relayed word to his client that the prosecutor had promised to make a specific recommendation, the picture changes. McAleney was entitled to credit his attorney's representation as to the fact of such an agreement, and to rely on it; and if his guilty plea was in fact induced by such a representation, we agree with the district court that relief is in order.

589 F.2d at 284. *Accord, United States v. Pallotta,* 433 F.2d 594 (1st Cir. 1970). *Compare United States v. McCarthy,* 433 F.2d 591 (1st Cir. 1970).

Here, it is established that Santos' counsel told him (1) that the state had promised to recommend a sentence of from ten to fifteen years if he pleaded guilty to second degree murder, (2) that he would in all probability receive a sentence of not more than fifteen years, and (3) that if anything

went wrong and the court refused the plea, the State had agreed to permit a withdrawal of the plea.[3]

▮ The transmittal by defense counsel of an alleged government promise brings this case squarely within the *McAleney* rule. Santos believed, and relied on, the representations of his court-appointed counsel that the state had promised a recommendation. That recommendation was not in fact ever made. His plea was therefore not knowingly and voluntarily entered, and it may not stand. *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *McAleney v. United States, supra; Mosher v. LaVallee,* 491 F.2d 1346 (2nd Cir. 1974). *United States v. Pallotta, supra; United States ex rel. Thurmond v. Mancusi, supra.* The petitioner had the burden of proof proving involuntariness, *Stidham v. Wingo,* 482 F.2d 817, 820 (6th Cir. 1973), but that has been discharged by Justice Gallant's findings of fact.

Those facts also establish that the conviction was a product of ineffective assistance of counsel to such an extent as to render the proceedings a "sham", and to deprive Santos of his right to counsel. *Mosher v. LaVallee,* 491 F.2d 1346, 1347 (2nd Cir. 1974), cert. den. 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974); *U.S. ex rel. Oliver v. Vincent,* 498 F.2d 340, 345 (2nd Cir. 1974). Indeed, the state concedes that if a defense counsel is found to have assured Santos of a non-existent agreement by the prosecuting attorney, the ineffective assistance of counsel claim is made out. Memorandum of Law in Opposition to Writ for Habeas Corpus, at 15.

---

Nothing in *McAleney* suggests that the First Circuit thought otherwise, or that it applied extra-constitutional standards derived from its supervisory powers or Fed.R.Crim.P. 11. Petitioner's claim in *Blackledge* appears to be similar to the claim presented here, and the Supreme Court cited both § 2254 and § 2255 cases to show its constitutional derivation. Id. at —— n.8, 97 S.Ct. 1621.

**3.** Justice Gallant's findings incorporate two alleged state promises: (1) a promise of a recom-

mendation by the state of a 10–15 year sentence; and (2) a promise that the plea could be withdrawn if the Court did not accept the recommendation. I do not understand Justice Gallant to have found any promise that Santos would definitely receive a 10–15 year sentence. Such a promise would be inconsistent with the promise to allow the plea to be withdrawn if the recommendation was not accepted.

## II

In an unusual reversal of roles, the state vigorously contends that this Court should not accept Justice Gallant's findings. Instead, the Court is urged to examine the entire record and make its own findings of fact. Respondent argues that there are here three separate findings of fact—those found in the coram nobis proceeding, and those found in the two habeas corpus proceedings in the Superior and the Supreme Courts.

This argument is without merit. Only in the Superior Court habeas corpus proceedings was any factual hearing held, with witnesses called, the rules of evidence observed, and credibility weighed in person by the factfinder. The petition for coram nobis was denied without an evidentiary hearing.[4] Because of the corroboration rule of *State v. Welch, supra*, Justice Bulman found no reason to inquire, and did not inquire, as to whether defense counsel had transmitted a "promise" from the prosecuting attorney to Santos. The coram nobis proceeding casts no real light on the factual allegations at issue here, which relate to occurrences outside the courtroom and the actual plea negotiations. *See Blackledge v. Allison,* —— U.S. ——, —— n.18, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *Machibroda v. United States,* 368 U.S. 487, 494–95, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Although the habeas corpus petition before the Rhode Island Supreme Court was technically a *de novo* proceeding, that court took no testimony, made no findings of fact, and denied the petition on the record below without opinion. The Rhode Island Supreme Court's disposition of Santos' petition can certainly not support an inference that no alleged prosecutorial promise was reported to Santos by his attorney, since such a finding would be unnecessary under *State v. Welch, supra.*

There is only one finding of fact in the entire record on the critical question, and it is unequivocal:

> It is clear from the evidence that Mr. Toro represented to his client that the prosecutor had entered into a bargain to recommend a certain sentence in exchange for his plea.

Tr. (July 1–3, 1974) at 70.

In making this finding Justice Gallant was fully aware that Santos stated at the time his plea was entered that no inducements had been offered to him. Tr. (July 1–3, 1974) at 68. I cannot disregard this finding. None of the criteria which might permit me to do so, *see.* 28 U.S.C. § 2254(d), has been met. *See Leavitt v. Howard,* 462 F.2d 992, 995 (1st Cir. 1972). In particular, it cannot be said that the facts found by Justice Gallant are not fairly supported by the record.[5]

## III

Ordinarily, when a habeas corpus petitioner prevails on a claim that the promise

---

**4.** If the only state proceedings had been the taking of the plea and the coram nobis proceeding, it is apparent that this Court would have been required to conduct its own evidentiary hearing. *Blackledge v. Allison,* —— U.S. ——, —— n.18, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *Mason v. Balcom,* 531 F.2d 717, *reh. den.,* 534 F.2d 1407 (5th Cir. 1976); *United States ex rel. Oliver v. Vincent,* 498 F.2d 340, 344 (2nd Cir. 1974). *See* 28 U.S.C. § 2254(d)(1–3) and (8). There was testimony in the state habeas corpus proceeding that, at the time the pleas were entered, "it was almost prohibited to put plea negotiations on the record, and that this fact influenced him [defense counsel] in indicating to the defendant what his answers to certain questions should be." Tr. (July 1–3, 1974) at 64. *See Id.* at 44. *Compare Blackledge v. Allison,* —— U.S. at ——, 97 S.Ct. 1621.

**5.** The Court assumes, *arguendo,* that it is open to the respondent in a § 2254 proceeding to challenge the facts found in a state proceeding where the applicant is willing to rest on those facts. A close reading of 28 U.S.C. § 2254(d), and analysis of federal habeas corpus and principles of comity, leave some doubt as to whether respondent may actually do so. *See Leavitt v. Howard,* where the First Circuit stated:

> "in the absence of any of the circumstances . . . enumerated, 28 U.S.C. § 2254(d)(1)–(8), making a hearing mandatory, the federal court is bound by the state court's finding of historical facts *unless the petitioner* offers convincing evidence that they are erroneous."

462 F.2d 992, 995 (1st Cir. 1972) (dicta) (emphasis added.)

on which he relied in pleading guilty was not kept, he is given a choice of withdrawing the plea or specific enforcement. *See, e. g., Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Mawson v. United States,* 463 F.2d 29 (1st Cir. 1972). Specific enforcement cannot be required of the state here, because the state may not be compelled to honor a promise it never made. Nevertheless, the state may decide that justice would be served by a kind of specific enforcement, and *McAleney v. United States,* teaches that the state should be granted that opportunity. 539 F.2d at 286. If the Attorney General can in good conscience recommend a sentence of 10–15 years, and if the Superior Court is willing to allow Santos to withdraw his plea in the event that it chooses not to accept the nonbinding recommendation, the plea may stand and Santos may be resentenced under it. If the State adopts this course of action, Santos will have obtained everything which he relied on in entering the plea and will have no right to withdraw it. If the Attorney General or the state judge do not believe that justice would be served by this course, Santos must either be released or be tried or permitted to plead anew. The state, of course, would then be free to make a different recommendation, or none at all.

A writ of habeas corpus shall issue, unless within sixty days petitioner is retried or is resentenced in accordance with this opinion.

By Order.