**Paul TEUBERT, Petitioner,**

v.

**John R. GAGNON, and Bronson C. La Follette, Respondents.**

**No. 79–C–297.**

United States District Court,
E. D. Wisconsin.

Oct. 18, 1979.

---

475

Richard M. Sals, Asst. State Public Defender, Madison, Wis., for petitioner.

Thomas J. Balistreri, Asst. Atty. Gen., Madison, Wis., for respondents.

MEMORANDUM AND ORDER

WARREN, District Judge.

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner, who is currently in state custody at the Fox Lake Correctional Institution, alleges that his pleas of guilty to burglary and attempted burglary were involuntary and therefore he should be allowed to withdraw them. The petitioner contends that his attorney misrepresented the terms of

the plea bargain and that he was induced to plead guilty on the basis of that representation.

On January 26, 1976, petitioner was charged with attempted burglary. On February 24, 1976, he was charged with burglary and felony theft. At two subsequent preliminary hearings, the county court judge found probable cause to bind the defendant over for trial on all the charges.

On June 30, 1976, as a result of a plea bargain, the petitioner entered pleas of guilty to the charges of attempted burglary and burglary. Pursuant to the plea bargain, the charge of felony theft was dismissed and the assistant district attorney recommended a presentence report which was ordered. Prior to the acceptance of the plea, the prosecution informed the court of the above agreement and the judge conducted his own inquiry to determine if the defendant was voluntarily entering his plea. (Hearing 6/30/76, TR. 2). Included in his questions were whether anyone had made any promise of any nature to influence the defendant's decision to plead guilty. The defendant answered the question negatively and indicated he was entering the plea freely and voluntarily. The judge also informed him that the court was not bound by any agreements that the parties may have made.

On August 17, 1976, the petitioner appeared for sentencing, at which time the assistant district attorney recommended maximum consecutive sentences for both charges. The defendant's attorney urged the judge to follow the presentence recommendation which was for probation and Huber Law privileges. The judge, however, sentenced the petitioner to consecutive terms of three years for attempted burglary and five years for burglary. At this time, the petitioner was given his right of elocution in which he urged the court to follow the presentence report. (Hearing 8/17/76, TR. p. 8–11).

Following his plea and sentence, the petitioner moved for modification of his sentence which was denied. On March 30, 1977, the petitioner filed a motion for post conviction relief requesting leave to withdraw his guilty pleas because they were involuntarily entered. The petitioner contended his pleas were induced by a misunderstanding as to the plea bargain. The petitioner claimed that his attorney informed him that as part of the plea bargain, the assistant district attorney had agreed to "go with" or "go along with" the sentence recommendation contained in the presentence report and that he did not. Petitioner alleges that, on the basis of this misunderstanding, he plead guilty on June 30, 1976.

A hearing on the petitioner's motion was held by the sentencing judge at which the defendant, his trial attorney and others testified regarding the voluntariness of petitioner's plea.

As a result of that hearing, the trial judge determined that the petitioner's trial attorney had indeed misinformed the defendant as to the plea bargain, and that there never was an agreement that the assistant district attorney would abide by the presentence report. *State v. Teubert,* May 24, 1977, Cty.Ct. Branch 2, Rock Cty., slip op. 10, 14. The court, however, concluded that the petitioner's pleas were not induced by the misrepresentation of counsel and, therefore, they were voluntary. *Id.* at 14–15.

On appeal, the Wisconsin Supreme Court affirmed the decision of the trial judge holding that the misunderstanding of the plea bargain did not render the pleas involuntary, because it was likely that had he understood the plea bargain, he would have plead guilty anyway. The record indicates the petitioner has exhausted his state court remedies and therefore, the petition is properly before this Court.

■ The decision to plead guilty to a crime is a very serious one which should not be affected by any undue influence or pressure. A plea of guilty has a lasting effect. In *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1972), the Court set out the effect of a plea of guilty. The Court said:

A plea of guilt differs in purpose and effect from a mere admission . . ., it is itself a conviction. Like a verdict of a jury it is conclusive . . . Out of just consideration for persons accused of crime, the courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.

A plea of guilty also results in the waiver of many constitutional rights, including the right to a jury trial and the right of confrontation. Therefore, it is effective only if it is made knowingly and voluntarily. *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *Coleman v. Burnett*, 155 U.S. App.D.C. 302, 477 F.2d 1187 (D.C. Cir. 1973). For a plea of guilty to be voluntary, the defendant must understand the consequence of his actions and be fully aware of the meaning of any and all promises made to him. A plea induced by threats, harassment, or misrepresentation is not voluntary. *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

When a guilty plea is induced by a mistaken belief that a binding plea bargain has been made, even if it is the defendant's own attorney who is responsible for the defendant's mistaken belief, the plea is not voluntary. *See United States v. Mancusi*, 275 F.Supp. 508, 517 (E.D.N.Y.1967) and cases cited therein. *See also McAleney v. United States*, 539 F.2d 282 (1st Cir. 1976). In the instant case, if the petitioner was induced by his mistaken belief of the terms of the plea bargain, then his pleas were involuntary. The petitioner, however, has the burden of proving by a preponderance of the evidence that his pleas were not voluntary. *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir.), *cert. denied*, 426 U.S. 953, 96 S.Ct. 3180, 49 L.Ed.2d 1192 (1976).

In a petition for habeas corpus, when a state court has held a full and fair hearing on a factual question such as the instant one, the federal courts are bound by the determination of the state court unless it appears from the record that the factual decision of the state court is not fairly supported by the record. *United States, ex. rel. Clark v. Fike*, 538 F.2d 750, 754 (7th Cir. 1976), *cert. denied*, 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781 (1977); *United States ex rel. Harris v. Illinois*, 457 F.2d 191, 196 (7th Cir.), *cert. denied*, 409 U.S. 860, 93 S.Ct. 147, 34 L.Ed.2d 106 (1972); *United States v. Mancusi, supra* ; 28 U.S.C. § 2254(d)(8).

At the hearing before the trial judge on the motion to withdraw the guilty pleas, the petitioner testified that his trial attorney informed him sometime in late June of 1976 that the district attorney had agreed to dismiss the attempted burglary charge, recommend a presentence report and "go with" or "go along with" the sentence recommendation in that report in exchange for his pleas of guilty to the burglary and theft charges. (Hearing 4/26/77, TR. p. 54). The petitioner also testified that, before he gave his approval to the bargain, he contacted his parole officer to find out whether she would make out the report and what her sentence recommendation might be. (Hearing 4/26/77, TR. p. 55). The parole officer verified that she had spoken to the petitioner on June 21, 1976 regarding a presentence report and recommendation and that she had told him she would recommend a year in county jail with Huber Law privileges and extended probation. (Hearing 4/26/77, TR. pp. 24–25).

The petitioner also testified that on June 30, 1977 when he was to enter his pleas of guilty, his trial attorney informed him that there had been a change in the plea bargain and he would have to plead guilty to attempted burglary and burglary, and the theft charge would be dropped. The petitioner agreed, so long as the assistant district attorney would still go along with the presentence recommendation. His attorney assured him he would, so the petitioner agreed to the change. (Hearing 4/26/77, TR. pp. 56–57).

According to the petitioner's testimony, after he had been sentenced, he repeatedly

requested his trial attorney to inform the court that he felt the plea bargain had been violated. Despite repeated assurances that the court would be so informed, the attorney never did so. (Hearing 4/26/77, TR. pp. 58–60). The testimony of his trial attorney also verifies this fact. (Hearing 4/26/77, TR. pp. 114–117, 123).

When asked to explain his answers to the judge's inquiry at the entering of his pleas, the petitioner testified he did not believe that the judge could be made aware of the plea bargain because the plea might not be considered voluntary. He also did not raise the issue at the time of sentencing for similar reasons. (Hearing 4/26/77, TR. pp. 70–76).

The petitioner's trial attorney testified at the hearing that he had advised the petitioner that, as part of the plea bargain, the district attorney's office had agreed to "go with" the recommendation for sentencing in the presentence report. In addition, the attorney testified that when he conveyed this offer to the petitioner, the petitioner indicated that, before he accepted, he would have to check with his parole officer to see what her recommendation would be. (Hearing 4/26/77, TR. p. 112). The trial attorney also testified that the petitioner had questioned him about the assistant district attorney's recommendation after the sentencing and that he had asked him to inform the judge of the breach of the plea agreement. Furthermore, the trial attorney testified he advised the petitioner by letter that he would notify the court at the motion for modification of sentence of the breach, but did not because he did not believe it would have any effect on the court. (Hearing 4/26/77, TR. pp. 114–117, 123).

■ According to his testimony, the attorney apparently misunderstood the bargain the district attorney's office had offered and he did not realize it was to be an open plea bargain. An open plea bargain is one where the prosecutor is free to recommend any sentence based on the presentence report. The petitioner's attorney apparently thought that the prosecutor would go along with the recommendation in the presentence report and that is what he told his client. (Hearing 4/26/77. TR. p. 119).

■ The Court notes that the attorney was inexperienced and that he did not intentionally misinform his client. This does not, however, explain his repeated failure to notify the court of the misunderstanding when it was made known to him at the entry of the plea and at the time of sentencing. Nor does it explain his unwillingness to advise the court of the mistake after his client had requested him to do so. As court appointed counsel and as an officer of the court, the Court believes his failure to do so poses a serious question of the attorney's competency. The Court must agree with the admonishment of the First Circuit Court of Appeals in *McAleney v. United States*, 539 F.2d 282 (1st Cir. 1976) where the court was faced with a similar incident. There the court said:

> There is accordingly a duty on attorneys to make sure whenever participating in plea bargaining proceedings, which are under the close scrutiny of the court, that any information they convey to their client is accurate and complete and that they understand what the applicable law and rules are. Failure to adhere to professional standards in this regard is no minor imperfection, and in our view constitutes grounds for questioning an attorney's continued fitness to represent clients in the federal court.

The petitioner here has not asserted a claim of ineffective assistance of counsel however, and therefore, the Court must confine itself to the question of whether the guilty pleas were indeed voluntary.

Based on the evidence adduced at the hearing, the trial judge concluded that the petitioner's attorney had indeed misinformed him of the plea bargain and he was so misinformed when he agreed to plead guilty. Notwithstanding this conclusion,

the judge concluded that this misinformation and belief of the petitioner did not induce him to plead guilty. Rather, the judge concluded that his plea of guilty was induced by the recommendation of his parole officer.

The Court has carefully scrutinized the transcripts of the hearing, the entry of the pleas, and the sentencing, as well as the other evidence, and must conclude that the findings of the judge are not fairly supported by the record insofar as he determined that the petitioner was not induced to plead guilty on the basis of the misinformation given to him by his court appointed counsel. In this regard, the Court finds that the petitioner's inquiry to his parole officer was inextricably linked with the misinformation provided by his trial counsel. The Court realizes that the petitioner did not at any time reveal his misunderstanding to the trial court at the time he entered the pleas, but the Court recognizes the petitioner's reluctance to do so as have other courts in similar circumstances. Again, the comment of the First Circuit in *McAleney, supra,* is appropriate.

> In the present situation, the Rule 11 proceeding did not flush out and cure the problem created by MacKay's incorrect transmission of the supposed government promise. To be sure, McAleney seemingly should have realized by the time of sentencing that the supposed promise was not being carried forward. However, given especially the inadequacy of representation, it does not seem appropriate on these facts to place the burden of speaking out on McAleney; even though no stranger to the courts, McAleney might have been relying until the last upon his supposedly knowledgeable attorney.

What was true of *McAleney* is also true of the petitioner. He had a right to rely on his attorney to correctly convey the information and to protect his rights.

Based on the record before this Court, the Court finds that the petitioner's plea was not voluntary. In fashioning the appropriate relief, the Court also follows *McAleney.* There the First Circuit granted a writ of habeas corpus to allow the petitioner to withdraw his guilty plea or, in the alternative, the government could, if it deemed it appropriate, have the petitioner resentenced on the condition it recommended the sentence which the petitioner believed he was promised. 539 F.2d at 286. In this case, the Court finds similar relief is appropriate, because it could give the petitioner all that he had thought he was getting when he plead guilty. Furthermore, a complete withdrawal of the guilty plea would place a greater burden on the state than it would have if it was found to have violated a plea bargain with respect to sentencing. *Santobello v. York,* 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

Therefore, the Court hereby grants the petitioner's request for a writ of habeas corpus and orders that he be allowed to withdraw his pleas of guilty entered on June 30, 1976. If, however, the state determines that in good conscience it can now recommend the sentence recommended by the parole officer in the presentence report, then the petitioner is to be resentenced by a judge other than the one who originally sentenced him. The state has sixty (60) days from the date of this order to elect to proceed as set forth above. If the state fails to so elect within sixty (60) days, then the writ shall issue ordering the guilty plea withdrawn.